[No. 17139.    Department One.    January 20, 1923.]

J. C. HARRIS, *Appellant*, v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Respondent.*

LLOYD HARRIS, *by his Guardian ad Litem J. C. Harris, Appellant* v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Respondent.*[1]

RAILROADS (66)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—DUTY TO LOOK. The driver of an automobile, struck at a railroad crossing, is guilty of contributory negligence, as a matter of law, precluding a recovery, where he drove on to the tracks without stopping or looking or paying any attention, in an open country where he had full view of an approaching train, had he looked for it.

NEGLIGENCE (22)—RAILROADS (66)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—DUTY TO LOOK—CHILDREN. Although the father's negligence is not imputable to him, a boy fifteen years of age, riding with his father in an automobile, struck at a railroad crossing, is himself guilty of contributory negligence, precluding any recovery, where they were in an open country with a full view of an approaching train, had they looked for it, and neither of them took any precautions or looked back to see if a train was coming.

[1]Reported in 212 Pac. 187.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered January 28, 1922, upon granting a nonsuit, dismissing consolidated actions in tort. Affirmed.

*Chas. W. Johnson,* for appellants.

*Carey & Kerr, C. L. Holcomb,* and *Omar C. Spencer,* for respondent.

MITCHELL, J.—These actions were brought, one by J. C. Harris, and the other by Lloyd Harris, by his guardian *ad litem,* J. C. Harris, to recover for damages growing out of a grade crossing accident. The two cases were tried together. At the conclusion of the evidence on behalf of the plaintiffs, defendant's motion for a nonsuit in each case was granted. Plaintiffs have appealed and present the two causes together.

The rights of the parties must be disposed of by the testimony of the appellants, J. C. Harris and his son Lloyd, the latter at the time of the accident being between fifteen and sixteen years of age. They were the only witnesses who testified as to the manner in which the accident happened, and from which the trial court concluded, as a matter of law, that they were guilty of contributory negligence which barred them from a right of recovery.

The accident occurred a short distance from Finley station on respondent's line of railroad. J. C. Harris testified that he and his children visited a neighbor named Moffett, arriving about one o'clock. Returning, they left for their home at 4 to 4:30 o'clock in an automobile. The curtains of the automobile were up, but they contained openings or windows. He was driving, Lloyd was to his right on the front seat, and two or three smaller children were on the rear seat. Moffett's home was about one-fourth of a mile from the

station and about half a mile from the first crossing they made over the railroad at a point west of the station. The country was open through which the railroad runs. Before leaving the Moffett house, none of them looked to see if a train was in sight. After leaving the house, travelling southwesterly towards the railroad, he did not look to see if a train was coming, saw no smoke nor anything indicating the approach of a train. At the first railroad crossing he did not look to see if a train was coming, and did not look back towards the station. Upon crossing the railroad, he then turned west, travelling along the railroad at varying distances from it of approximately forty feet, for a distance of two hundred yards to a quarter of a mile to the second crossing of the railroad, where the accident happened. Between the first and second crossings, neither he nor his son looked to see if a train was coming, though he thinks they could have seen had they looked. He did not look at all; the automobile kept going all the time after they left Moffett's house, didn't change gears, and drove about fifteen miles an hour. There was no obstruction between them and the railroad or the station at any time, although the road paralleling the railroad gradually ran lower than the surface of the railroad, until at a point near the second crossing it was nearly ten feet lower. He further testified, as shown by questions and answers, as follows:

"Q. After you crossed the crossing and were going down that 200 yards parallel with the railroad you were on the wrong side of the car to see it out through the side curtains? A. The fact of the matter is I did not look to see whether I could see out of the curtains or not. Q. As a matter of fact, if you had turned and looked out through the hole or opening in the rear of the car you could have seen it all right? Couldn't you?

A. Had it been in the direct direction; yes, sir.  Q. If it had been almost anywhere from the depot to the crossing where it struck you?  A. It seems to me that I could. . . . I just didn't think anything about the train, because I thought the train had gone by.  I know we called it the four o'clock train but I did not know exactly what time it came.  I have been at Finley frequently and lived in sight of the railroad tracks.  I was aware that it was a much traveled railway and that at least two passenger trains and a good many freight trains ran over it every day.  Q. And you knew it was about time for that passenger train?  A. Yes, sir."

He said the first that he knew of the train was just as they arrived at the second crossing, when Lloyd yelled: "There is the train."  They "were just rolling onto the railroad, you might say."  He "looked, there was a screech of the whistle, and we were hit."

Lloyd's testimony, though not so much in detail, was similar to that given by his father.  He said that, on coming out of the Moffett's house, he looked and did not see any train.  After that he did not look for and did not see any train until just at the instant of the collision.

The testimony shows that at that time there was a slight breeze and some falling of snow, but that together they caused no disturbance of visibility except at a considerable distance.  The accident occurred on February 20.

The contributory negligence of the appellants was so apparent, it appears to us, that there is no necessity to discuss the evidence, nor to discuss the applicable law, in detail.  Appellants seem to have done nothing whatever to protect themselves, but, on the contrary, were positively imprudent and careless.  The situation is controlled by our cases of *Beckwith v. Spokane*

*International R. Co.,* 120 Wash. 91, 206 Pac. 921; *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512; *Golay v. Northern Pac. R. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Cable v. Spokane & Inland Empire R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, and the authorities referred to in those cases. While the contributory negligence of the father, the driver of the automobile, is not imputable to his son Lloyd, still we think the testimony shows that he, being of years of discretion and well along in his classes at school, was himself guilty of contributory negligence. *Cable v. Spokane & Inland Empire R. Co., supra; Hoyle v. Northern Pac., R. Co.,* 105 Wash. 652, 178 Pac. 810; *Sadler v. Northern Pac. R. Co.,* 118 Wash. 121, 203 Pac. 10.

Judgment of nonsuit was properly granted in each case.

Affirmed.

PARKER, HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.