[No. 21417. Department Two. July 2, 1929.]

JESSIE GILLUM *et al., Respondents,* v. PACIFIC COAST
RAILROAD COMPANY, *Appellant.*[1]

[1]Reported in 279 Pac. 114.

658

*Stratton & Kane* and *Geo. W. Korte,* for appellant.
*Weter, Roberts & Shefelman* and *F. C. Kapp,* for respondents.

FULLERTON, J.—The respondents, Gillum, recovered in this action against the appellant, Pacific Coast Rail-

road Company, in the sum of fifteen thousand dollars for personal injuries suffered by the respondent Jessie Gillum.

The accident causing the injury happened at the intersection of Horton and Colorado streets, both public streets of the city of Seattle. Horton street at this place extends east and west. It is fifty feet wide. Its middle section is paved with brick for a width of thirty-five feet, and it is used somewhat extensively by pedestrians and vehicles. Colorado street extends north and south, and is one hundred feet in width. It is not paved and is not used for general vehicular traffic. It has upon it four standard-gauged steam railway tracks, extending parallel with the margins of the street at the place where they cross Horton street, and parallel with each other. The tracks are spaced ten feet apart. Travelling east on Horton street, the first track is encountered some five and one-half feet east of the west margin of Colorado street. This track, and the next succeeding one, are owned and operated by the Northern Pacific Railway Company. The third is owned and operated by the appellant; the fourth by the Chicago, Milwaukee & St. Paul Railway Company.

The accident causing the injuries to the respondent occurred shortly prior to eight o'clock in the morning. The respondent was then going to her place of work. She had taken a street car at her home and ridden thereon to a place on Horton street a short distance west of Colorado street. From thence she walked on Horton street towards its intersection with Colorado street, and had almost reached that point when she was overtaken by an automobile driven by a Mr. Waldron. Mrs. Waldron was riding in the rear seat of the automobile. The Waldrons were acquaintances of the respondent, and when they overtook the respondent, the automobile was stopped and she was invited

to ride. She got into the automobile, taking a seat beside the driver. The automobile was then driven to the intersection and partly across it. When it reached the railway track of the appellant it was struck by a train owned and operated by the appellant, consisting of a box car and an engine, the engine pushing the box car from a position behind it. The automobile was dragged for some one hundred and fifty feet by the train and practically demolished. In the collision, Mr. and Mrs. Waldron were killed, and the respondent received the injuries for which she brought the present action.

The appellant first challenges the sufficiency of the evidence to sustain the verdict and the judgment entered thereon. Two contentions are made under this head, the first being that there was no negligence shown on the part of the appellant; and the second, that the respondent was guilty of negligence causing or contributing to her injuries.

The first of these contentions, we think, presented a question for the jury. The ordinances of the city of Seattle limited the speed of trains over certain of its streets to six miles per hour, and none of the witnesses testifying to the speed of the train, even those on the part of the appellant, estimated its speed as being within the limit fixed by the ordinance. The concensus of opinion among the appellant's witnesses was that it was travelling at a speed between twelve and fifteen miles per hour, while the respondents' witnesses estimated its speed as being much higher. If the ordinance applies to the particular place, and is in itself a valid ordinance, it is, of course, at once apparent that the appellant was operating its train in a negligent manner; as, under the rule in this state, it is negligence as matter of law to fail to observe a prescribed statutory duty. *McKinney v. Port Townsend*

& P. S. R. Co., 91 Wash. 387, 158 Pac. 107; *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20.

But the appellant contends that the ordinance was not intended to apply to this street, and that, if it was so intended, it is void because unreasonable. The ordinance reads as follows:

"Section 101. It shall be unlawful for any person having control of the running or drawing of any cars by any steam locomotive, or the control or running of any steam locomotive alone, to allow or permit the same to go or move along, over or across the surface of any public place, or at any place south of Denny way and north of Hanford street at a greater rate of speed than six miles per hour."

The street in question is not south of Denny way, or north of Hanford street, and the argument seems to be that because it is not between these places, it is excluded from the terms of the ordinance. But the ordinance, as we read it, prohibits the operation of the designated instrumentalities at any public place in excess of the prescribed limit, and prohibits their operation in excess of the limit at any place between the designated places whether the place is public or not. The only question is, therefore, whether the place of the accident was a public place, and seemingly, there could be no doubt as to this fact.

We confess to some difficulty in gathering the precise ground upon which the appellant rests its contention that the ordinance is void; but, as we understand it, the contention is two-fold, first, that the permissible rate of speed is so limited as to be, under any and all circumstances, an undue interference with railway traffic; and, second, that, if under any circumstance it would be permissible to limit the rate of speed as it is so limited, the present instance does not present such a circumstance.

But it is among the undoubted powers of a municipality to regulate by ordinance the rate of speed at which railway trains may be operated within its limits. The power is legislative, not judicial or administrative, and it must be an extreme instance where the courts can say that an ordinance enacted in the exercise of the power is void on its face. It is possible that, if the speed was so limited as to prevent the practical operation of trains over the railway, the courts would so declare, but we cannot conceive that a limit of six miles per hour has such an effect.

Nor can we conclude that the situation was such as to warrant the court in holding, as matter of law, that the speed limit was unreasonable. The street in question is paved for vehicular and foot traffic, which fact in itself is persuasive that it is subjected to more than ordinary use. The evidence, also, shows, as we read it, that it was a much used street. It was, moreover, an unusually dangerous crossing. It is in a business and manufacturing district, and there are many contiguous buildings which obstruct the view of approaching trains until the street is reached, and the noises of the place make it difficult to hear them. More than this, the appellant railroad has itself recognized the crossing as a dangerous one, and that the speed limited by the ordinance is not unduly restrictive. In its instructions to the operators of its trains (Bulletin No. 504) it warns them of the danger of the situation, and directs that their speed be limited at this particular crossing to six miles per hour; the language of the bulletin is this:

"Trains and engines will reduce speed to six (6) miles per hour crossing all paved streets in Seattle: Spokane, Horton, and Hanford streets are particularly dangerous crossings account view obstructed."

While the appellant has cited many authorities as supporting the various contentions above noticed, we do not feel that we need enter upon a review of them. None of the cases, as we understand them, supports the view that a railroad company, under the circumstances such as are here presented, could not be found guilty of negligence.

As we have noted, the other contention on this branch of the case is that the injured respondent was herself guilty of such negligence as will prevent a recovery on the part of the respondents. The main facts leading up to the accident, we have outlined in our statement. In addition thereto, the respondent testified that, as she entered the automobile, Mrs. Waldron, who, as we have before noticed, was riding in the rear seat, made some remark to her about the rapidity at which she was walking, saying that they thought they would not catch up with her, and that, on taking her seat, she did not immediately turn towards the front of the car, but threw her arm over the back of the seat and explained to Mrs. Waldron why she was hurrying; that she then started to turn around and straighten herself out, and had hardly done so when the crash came. She further testified that she had crossed Colorado street at that place many times; that she knew the railroad tracks were there and had seen trains operated over them; and that, at this particular time, she did not look for approaching trains, saying in this connection:

"No, I never thought about the tracks. In fact, I didn't know that we were that close to those tracks."

She also testified that Mr. Waldron started the automobile immediately after she entered it; that he said nothing to her, and she said nothing to him at the time, except, perhaps, to exchange the usual greetings, and that she did not thereafter call his attention to

the crossing; that, in so far as she observed, he attended strictly to his driving, and was driving at the time of the collision at a speed of about five miles per hour. She also testified that she heard no whistle blown or bell rung, or other noise that would give warning of the approaching train.

There was a dispute in the evidence as to the distance a train could be seen prior to the time the automobile reached a point directly upon the track of the appellant, but possibly this is not a material circumstance, since it is the injured respondent's negligence that is the subject of inquiry and since she concedes that she at no place looked for approaching trains. We think, however, that it can safely be assumed that, had the driver of the automobile exercised that degree of vigilance incumbent upon him, he could have stopped the automobile in time to avoid a collision, even had he observed the train at the place it concededly became visible.

In support of its charge of negligence, the appellant cites and principally relies upon our cases of *Sadler v. Northern Pac. R. Co.*, 118 Wash. 121, 203 Pac. 10, and *Harris v. Spokane, Portland & S. R. Co.*, 123 Wash. 274, 212 Pac. 187. In the first of these cases one Sadler was riding in an automobile truck driven by one Ball. As the truck was crossing the railroad track of the defendant in the case, it was struck by a train of the defendant, and Sadler was killed. The action was brought by his administratrix.

The facts of the case, stated with less detail than they are in the opinion of the court, were, in substance, these: Sadler was not riding as an invited guest; he rode by permission on his own solicitation. He began his ride a considerable distance before the railroad track was reached and was at all times fully aware of his situation. The country surrounding the place of

the accident was open, the train approached towards the side of the truck on which Sadler was sitting and could be seen for about one thousand feet from any point in the way on which the truck was travelling for a considerable distance away from the track. The road over which the truck travelled was rough, and the truck travelled at a speed of about three miles per hour. There was time for Sadler to have warned the driver of the truck of the approach of the train in time for the driver to have stopped the truck in a place of safety. There was time, also, for Sadler, had he observed the train when it was first plainly observable, to have escaped from the truck to a place of safety, even had he then warned the driver of its approach and the driver had not heeded the warning.

In the second of the cited cases, two actions were combined for trial. The one pertinent to the inquiry here was by a minor between fifteen and sixteen years of age, suing by guardian. The facts disclosed were, in substance, these: The father of the minor, the minor, and certain other members of the family, were visiting a neighbor. They started on their return home between four and four-thirty o'clock, riding in an automobile. The father drove the automobile, the son sitting on the front seat with him at his right. Between the neighbor's and the home, the road upon which they travelled twice crossed the tracks of the defendant railway company. The crossings were between two hundred yards and a quarter of a mile apart, and the road between the crossings paralleled the railway tracks. When the parties reached the first of the crossings they passed over it without either of them looking for the approach of trains, and they proceeded in the same way at the next crossing, discovering an approaching train when it was almost upon them and too late to avoid being struck by it. The country

through which the railway ran was open, and trains could be seen in either direction from the place of the accident for long distances. The son was familiar with the surroundings, knew that the road was much used by trains, and knew that a regular train was due at about that hour, yet he did not look at either crossing for the approach of a train, and must have known from his situation that the driver of the automobile was equally unobservant.

It seems to us that there is a marked distinction between the situation of the injured persons in the cited cases and the situation of the injured person in the case before us. In neither of the cited cases was the injured person, strictly speaking, an invited guest. In the first, the person was riding at his own solicitation, and in the second he was a member of the family of the driver of the automobile, and the purpose which took them upon the highway had in it something of the nature of a joint adventure.

In the second place, the opinions in the cases clearly show that the court did not intend by its decisions to depart from its theretofore announced rules applicable to an invited guest. In each of the cases it was said that the negligence of the driver was not to be imputed to the person riding with him; and in the first it was said that the question whether the person so riding was guilty of negligence was ordinarily a question for the jury, and that it was only in an extreme case that the person could be declared so guilty as matter of law.

In the third place, the immediate circumstances of the cases are not the same, nor do they seem to us as being at all parallel. In the cited cases, the persons injured had every opportunity to look out for their own safety. The danger to which they were being subjected was plainly within their vision, and had they given

even the slightest attention to the surroundings they could have protected themselves against it. It was not so with the injured person in the case before us. She entered the automobile only a short distance from the place of the accident. The automobile was at once started on its way, and the collision causing the injury came, according to her testimony, before she realized the situation. Whether she was bound to realize the situation, and whether she had an opportunity, had she so realized it, to protect herself from injury arising from it, are questions, we think, on which minds might reasonably differ. Being such, they were questions of fact for the determination of the jury, not questions of law to be determined by the court. This was the view of the learned trial judge, and he submitted the questions to the jury under instructions to which no objections are made.

■ Of the errors assigned which are thought to require a new trial, the first to be noticed is a contention made with reference to the ordinance of the city of Seattle we have hereinbefore quoted. The appellant offered to prove that no one connected with the enforcement of the city's ordinances construed it as applying to the place here involved. The court rightly, we think, refused to admit the testimony. Contrary to the appellant's contentions, the ordinance is not, in our opinion, either ambiguous or uncertain. This being so, it was not within the power of the administrative officers of the city to modify or annul it.

■ It is further objected in this connection that the ordinance, because of the low speed limit it permits, is void as an unlawful interference with interstate commerce. But the authoritative court has negatived this objection. In *Erb v. Morasch,* 177 U. S. 584, that court had before it the question of the validity of an ordinance of Kansas City, in the state of Kansas,

limiting the speed of trains operated within the city to six miles per hour. The supreme court of the state of Kansas had held the ordinance valid, and this holding was affirmed in the cited case. The court specifically noticed the objection here urged, saying with respect thereto,

"Such an act is, even as to interstate trains, . . . within the power of the state, until at least congress shall take action in the matter."

■ It is next contended that the admission in evidence of the bulletin before mentioned was error. But in this particular case, whatever the rule may be in other situations, it was admissible as a declaration against interest. The appellant was contending that the speed of its train at the time of the accident was not excessive, and that the crossing at which the accident occurred was not an especially dangerous crossing. Plainly, any declaration to the contrary made by the officers of the company having authority to speak for it, was admissible to refute the contentions.

■ The appellant next complains of certain of the instructions given by the court to the jury. In one of its instructions the court gave the following:

"It is not necessary for the plaintiffs to prove that Jessie Gillum was not guilty of any of the acts of contributory negligence set up in the answers. The presumption is that she used due care and the burden of proof that she did not use due care is upon the defendant."

And in another:

"If you find that the automobile [the automobile in which the respondent was riding] was as a matter of fact being operated in a careful and prudent manner then of course the plaintiff could not have been negligent in her action in riding in said car. In this connection you are instructed that the presumption is that the operator of said car was operating the same in a

careful and prudent manner, and the burden is upon the defendant to overcome such presumption by a fair preponderance of the evidence.''

It is urged against these instructions that they were unfair to the appellant; that the effect of them was to tell the jury that there was evidence supporting the respondents' case; that they put presumption ahead of proof; and that it is a

''. . . well-known rule of practice that, in the absence of evidence, there is no presumption either way; that is, that neither care nor want of care is presumable, and that, if the facts show a duty of care, the plaintiff must give some evidence from which the jury may infer that he exercised it. In any event a presumption never goes to the jury as a question of fact or in aid of a fact.''

But we think these criticisms mistake the purport and effect of the instructions. In this jurisdiction, it is the rule, contrary to the rule in some others, that contributory negligence is an affirmative defense, to be alleged and proven by the party asserting it. In so far as the first of the instructions is concerned, it seems to us that the court did no more than give effect to the rule. With reference to the second, we cannot view it as anything more than the assertion of the well-recognized principle that negligence is never presumed but must be shown affirmatively. Within these views, it is plain that neither of the instructions is erroneous.

■ Another instruction was the following:

''If you find from the evidence that the proximate cause of the injury to Jessie Gillum was made up of two elements, that is, the negligence of the defendant railroad company and also the negligence of the driver of the automobile, and that Jessie Gillum herself was not guilty of contributory negligence, then the defendant railroad company is liable for the injury, exactly as if it were solely responsible for the proximate cause of her injury.''

But we find no error in the instruction. It is but a statement of the general rule that where the concurrent negligence of two or more persons combined results in an injury to a third person, the third person may recover from either or all of them. *Jones v. Spokane, Portland & Seattle R. Co.,* 69 Wash. 12, 124 Pac. 142.

In their complaint, the respondents set forth some eight different grounds upon which the negligence of the appellant was predicated. In its requested instructions the appellant asked the court to withdraw from the consideration of the jury certain of these because in part they were immaterial and unfounded, and in part because they had no support in the evidence. The court did not give the instructions in the form requested, but, in his general charge to the jury, stated to them in succinct form the issues they were to consider. In none of those so stated do we find any that are untenable, or any that there was not some evidence to support. It is our opinion that the court fully complied with its duty in this respect. Under our present practice, pleadings do not go to the jury. The jury gather the issues upon which they are to pass from the instructions of the court. Unfounded and unsupported allegations in the pleadings are thus not misleading, and there is no necessity for the court to take the pleadings and point out from them the allegations that are or are not for their consideration.

Finally, it is contended that the verdict is excessive. But, while the verdict is large, we find nothing to indicate that it was the result of anything other than the deliberate judgment of the jury. In the case of *Kalberg v. Bon Marche,* 64 Wash. 452, 117 Pac. 227, we quoted, as stating the applicable rule, the following from Thompson on Evidence:

''The quantum of damages to be allowed in an action of tort is a matter peculiarly within the province of the jury, and especially is this the case with personal injuries where the law fixes no precise rule of damages. . . . 'It is only where verdicts are palpably against evidence, or obviously the result of passion or prejudice, that courts are permitted to interfere upon the ground that the verdict is excessive or unauthorized by the facts.' 'The damages assessed by the jury may have been greater than the court would have awarded upon the evidence. But the parties are entitled to the judgment of the jury, and not of the court, upon that question; and courts will not set verdicts aside on the ground that damages are excessive or inadequate, unless it is apparent that the jury acted under some bias, prejudice, or improper influence, or have made some mistake of fact or law; mere difference of judgment is not sufficient.' 'The court cannot substitute its own sense of what would be proper for the verdict of the jury.' ''

Applying the principle as stated to the facts of the present case, we find no cause to interfere with the verdict.

The judgment will stand affirmed.

MAIN, PARKER, and FRENCH, JJ., concur.