[No. 22684. Department Two. December 5, 1930.]

ROBERT SANDERSON, SR., *Respondent*, v. HARTFORD
EASTERN RAILWAY COMPANY, *Appellant*.[1]

[1]Reported in 294 Pac. 241.

*Coleman & Fogarty, W. P. Bell,* and *Grosscup, Morrow & Wallace,* for appellant.

*Vanderveer, Beardslee & Bassett,* for respondent.

BEALS, J.—Robert Sanderson, senior, the plaintiff in this action, whose home is at Edmonds, recovered judgment upon the verdict of a jury against defendant for personal injuries suffered by him as the result of a collision between an automobile in which plaintiff was riding, the property of and driven by plaintiff's son, Samuel Sanderson, and a gasoline-driven motor car operated by defendant on its railway track in Snohomish county, the accident occurring at the point where the main highway between the village of Robe and the town of Granite Falls crosses defendant's railway.

For a week prior to the accident, plaintiff and his wife had been camping near the village of Robe, they having driven to the camping ground in their automobile, operated by plaintiff. The day before the accident, plaintiff's son, together with his family and his sister-in-law and her family, had driven to the camp in their respective automobiles for a short visit, and probably with the intention of escorting the old folks on their return home. When the visitors were preparing to leave, plaintiff's son suggested to plaintiff that another member of the party drive plaintiff's car and that plaintiff ride home in the son's car so that plaintiff might be relieved from the burden of driving, and that father and son might enjoy each other's society during the trip. This suggestion being adopted, the machines proceeded, plaintiff riding in Samuel's car, occupying the front seat with his son, who was driving, the rear seat being occupied by two of the plaintiff's grandchildren. At the time of the accident, the automobile was traveling towards the

south, while the gas car operated by defendant was approaching the crossing proceeding in an easterly direction.

Defendant's railroad track is of standard gauge, and was constructed some years ago for use as a regular railroad track in the operation of steam locomotives and cars. Where it crosses the highway in question, the track is about six feet higher than the general elevation of the surrounding terrain, which is practically level. The highway approaches the crossing at each side on a grade of approximately ten per cent. On the south side of the track, there stood a crossing sign about eight feet high, visible from either side of the track. This sign was on the side of the track opposite to that from which the car in which plaintiff was riding was approaching the track, there being no sign giving warning of a railroad crossing on the north side thereof. At the time of the accident, some brush and weeds were growing along the side of the track, the exact height of this brush being in dispute.

Defendant was operating along its railway track a gasoline-driven motor car, being an automobile made over for use on the rails. This car was drawing a trailer and was running up a grade of approximately two per cent, and, as defendant contends, at the rate of approximately twenty-five miles per hour. The car was equipped with an ordinary automobile horn, but had neither bell nor whistle. Testimony introduced by defendant indicated that, before reaching the crossing, defendant's motorman sounded the horn, he testifying that the first signals were given about seven hundred feet from the crossing, and that later, when he saw the automobile in which plaintiff was riding, he sounded the horn continuously. Defendant's gas car and the automobile collided at the crossing, the automobile being turned over and the gas car derailed.

As the result of the accident, plaintiff suffered severe injuries, the jury by its verdict allowing him $8,500. The verdict was reduced by the trial court, on motion for a new trial, to $6,500, for which amount judgment was entered against defendant. From this judgment defendant appeals.

Appellant assigns error upon the ruling of the court in denying its motion for judgment of dismissal; in refusing to instruct the jury to render a verdict in favor of appellant; in giving certain instructions to the jury; and in refusing to instruct the jury as requested by appellant.

In the first place, appellant contends that respondent's son, the driver of the automobile, was clearly guilty of negligence, and that such negligence should be imputed to respondent, who, for that reason, should be precluded from recovering judgment against appellant. Assuming for the purposes of the argument that the driver of the car in which respondent was riding was guilty of negligence, such negligence will not be imputed to respondent, unless such a situation existed as in law makes the driver respondent's agent and, for that reason, bars respondent from recovery because of his agent's negligence. The question of imputed negligence, considered in connection with actions for damages instituted by a passenger in an automobile who has been injured as a result of a collision between the automobile and another vehicle, is one of considerable difficulty. In order to hold that the negligence of the driver is to be imputed to the passenger, it must appear that the relation of principal and agent existed between the persons, which relation must, of course, be founded upon contract, either express or implied. This court, in the case of *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, in considering this question, said:

476

"There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance. One or more of the parties may, of course, intrust performance to another or others, but this involves only the law of agency; his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same."

The evidence before us fails to disclose the elements of a "joint adventure," or any facts which constituted Samuel Sanderson in law respondent's agent for the purpose of driving Samuel's automobile. In the suggestion made by respondent's son that respondent ride home in the son's car, and in the acceptance of this invitation by respondent, it is clear that respondent entered upon this journey as a mere invitee, and not as a joint adventurer, and that, therefore, the negligence of the driver of the car should not be imputed to respondent, and that such negligence, if any there was, is not a bar to respondent's recovery of damages against appellant. Under the evidence it is entirely immaterial whether or not Samuel Sanderson drove to Robe for the sole purpose of bringing his father home, or whether that was one of several objects of the trip, or whether that plan was never thought of until the party proceeded to break camp. One may be no less a guest even though the host has gone a long way to invite him to ride, and the ride may be a very great convenience to the guest. Such a circumstance might, under a different state of facts, have some bearing and be properly considered in determining the relation between the parties, but it has no probative force here.

In the next place, appellant contends that respondent was himself guilty of contributory negli-

gence, and that it must be held as matter of law that respondent cannot recover damages for his injuries against appellant. While it is true that under certain circumstances a person riding in an automobile as a guest may, because of his failure to observe existing physical facts which should warn him of approaching danger, be guilty of contributory negligence, and thereby precluded from recovering judgment for damages on account of injuries to person or property suffered by him as the result of the negligence of another, we do not find that in the case at bar appellant can invoke this rule to defeat respondent's action.

In support of its argument on this branch of the case, appellant cites the opinion of this court in *Harris v. Spokane, Portland & Seattle R. Co.*, 123 Wash. 274, 212 Pac. 187, in which a sixteen-year-old boy, riding in an automobile driven by his father, was held guilty of such contributory negligence as would prevent the recovery of damages in his favor for injuries suffered as a result of a grade crossing collision, it appearing that neither the father nor his son made any observation as to whether the train was approaching along the track which the automobile was about to cross, and that they didn't see a train which was approaching in plain sight. It was held that both father and son were guilty of contributory negligence, and that the trial court had properly entered judgment of nonsuit against each of them.

In the case of *Gillum v. Pacific Coast Railroad Co.*, 152 Wash. 657, 279 Pac. 114, the defendant contended that the plaintiff, who was injured by a train operated by defendant while riding as an invitee in an automobile, was herself guilty of such negligence as prevented a recovery in her favor. It appeared that Mrs. Gillum had entered the automobile at the invitation of the owners, seating herself in the front seat by the

driver, and immediately turning to talk to a friend who was sitting on the back seat. She stated that she did not think about the railroad tracks, and did not know that the car was close to them. She testified that she heard no whistle nor any sound which gave notice of the approach of the train. It was apparently assumed that the driver of the car was guilty of negligence, and that he could well have stopped the automobile in time to avoid the collision had he observed the approaching train at the place it concededly became visible. The court, in its opinion, distinguished the case from the cases of *Sadler v. Northern Pac. R. Co.*, 118 Wash. 121, 203 Pac. 10, and *Harris v. Spokane, Portland & Seattle R. Co.*, 123 Wash. 274, 212 Pac. 187, and held that under the evidence Mrs. Gillum was not guilty of such contributory negligence as would bar her recovery of damages.

In order to hold as matter of law that a guest riding in an automobile has, in case of a collision, been guilty of such contributory negligence as bars his recovery of damages against the person responsible for the operation of the vehicle which fills the role of party of the second part to the collision, actual negligence on the part of the guest must clearly appear. The situation must fall within the rule laid down in the case of *Harris v. Spokane, Portland & Seattle R. Co., supra*, in which it was held that the driver of the automobile and his son, who was riding with him, ''seemed to have done nothing whatever to protect themselves, but on the contrary were positively imprudent and careless.''

We have carefully examined the testimony and are satisfied that this case is, on the facts, clearly to be distinguished from the authorities relied upon by appellant, and that it cannot be held as matter of law that respondent, in failing to observe the car approaching

along appellant's railroad track, was guilty of such contributory negligence as precludes him from recovery in this action.

■ Appellant next contends that the court erred in instructing the jury as to the law upon certain phases of the case.

Section 2528, Rem. Comp. Stat., reads as follows:

"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of misdemeanor."

Section 2303, Rem. Comp. Stat., defines the word "railway" in the following terms:

"The term 'railway' or 'railroad' shall include all railways, railroads and street railways, whether operated by steam, electricity or any other motive power."

In the case at bar, the court instructed the jury as follows:

"One of the statutes of this state provides that every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded, at least eighty rods from any place where such railway crosses a traveled road or street on the same level, or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of a misdemeanor.

"I instruct you that the law is not satisfied with a mere formal observance of its requirements, but the statute which I have just quoted to you requires that the whistle or bell with which the locomotive is equipped must be of a size and character reasonably suited to warn travelers at railroad crossings of the

approach of a train and that the bell or whistle must be sounded in such a manner as to give reasonable warning of such approach. And I instruct you that any violation of this statute, as I have just explained its provisions, would be negligence, as a matter of law, for which the railroad company would be liable in damages to anyone injured as a natural and proximate result.''

Appellant does not contend that the horn of the·gas car which it was operating along the track was sounded as far back from the crossing as is required by the statute above quoted. Testimony was introduced by appellant to the effect that the horn was sounded at a point approximately seven hundred feet from the crossing, and in this connection appellant requested the court to charge the jury as follows:

''You are instructed that the burden of proving that the defendant was negligent rests upon the plaintiff. If the motorman in charge of the car which collided with the automobile sounded his horn in sufficient time before the car reached the crossing to have enabled the driver of the automobile to stop before going on the track, in that event the defendant was not guilty of negligence, and your verdict should be for the defendant.''

Appellant excepted to the instruction given by the trial court and to the refusal of the court to give the requested instruction, and argues here that the court committed reversible error in giving the instruction complained of and in failing to give the requested instruction.

Appellant contends that a gas-driven motor car, driven along a railway track, is not a locomotive, and that the section of the statute above quoted has no application to the situation here presented. While it is true that the word ''locomotive'' generally suggests the idea of a large engine propelled by steam along a railway, we find no reason for holding that the statute

is limited in its application to such a machine. The purpose of the section is clear; it requires a certain warning to be given of the approach to a crossing of a train moving along a railway track. The statute was passed for the benefit and protection of the traveling public, and should not be strictly construed so as to limit or restrict its manifest purpose. Appellant, having chosen to operate trains on its railway propelled by gasoline-driven motors, must be held, in the operation of such trains, to compliance with the statute now being considered.

A railway track is in itself some notice to the traveling public that cars may be moving thereon, but the statute requiring the ringing of a bell or the sounding of a whistle when a train is approaching a grade crossing is well known, and these familiar sounds are listened for by persons approaching the track with the intention of crossing the same. To permit a person operating cars upon a track to employ, in propelling its cars, an engine driven by some power other than steam, and thus escape the operation of the statute, would have the effect of increasing the already considerable danger at grade crossings and subject the traveling public to an increased hazard. The sounding of a bell or whistle immediately suggests the approach of cars along the railway, while the sounding of an automobile horn carries no such intimation, but rather intimates the approach of an automobile along the highway. The authorities cited by appellant in support of its contention that a gas-driven car is not a locomotive are not applicable to the situation here presented. The trial court was correct in applying the statute above quoted, and in refusing to submit to the jury, as requested by appellant, the question of whether or not appellant's employee in charge of the gas car

sounded his horn in sufficient time to enable the driver of the automobile to stop before reaching the track.

Appellant next contends that the trial court erred in instructing the jury as matter of law that at the time of the accident respondent was riding in his son's automobile as a guest, and that the negligence of the driver of the car could not be imputed to respondent. We have hereinabove discussed this question and concluded that it conclusively appears from the evidence that respondent was at the time of the accident a guest in Samuel Sanderson's automobile. It follows that the instruction given by the trial court was correct.

Appellant also assigns error upon the giving by the court of the following instruction:

"To restate the matter in another form, the law does not impose upon a guest an absolute duty to direct or supervise his host in the operation of the car, but does require that he exercise reasonable care for his own safety, and if the circumstances are such that a reasonably prudent person in his position would warn or caution the driver about the operation of the car, then he must do so or he is guilty of negligence."

Under the evidence in the case at bar, we find no error in this instruction. Appellant argues that the jury should have been instructed that respondent, even though a guest, was under the duty of making reasonable observation, and that if he noticed that the driver of the car was approaching the crossing, without looking for an approaching train, or, if the crossing was obscured by brush, without stopping, and made no objection nor request to stop the automobile so that investigation of the situation could be made, the negligence of the guest would bar his recovery. No such burden as this rests as matter of law upon a guest under the circumstances disclosed by this record. The rule laid down by the court in its instruction above

quoted was, under the circumstances here, as favorable to appellant as appellant had any right to demand.

Appellant assigns error upon the failure of the trial court to give certain instructions which it seasonably requested. We have carefully examined these requested instructions, and fail to find that any error was committed by the trial court in refusing to give the same. The requested instructions were either inapplicable to the facts or embodied incorrect statements of the law.

Finding no error in the record, the judgment appealed from is affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.

