[No. 23222.  *En Banc.*  September 20, 1932.]

HUGO HAAGA, *Respondent,* v. SAGINAW LOGGING
COMPANY *et al., Appellants.*[1]

[1]Reported in 14 P. (2d) 55.

548

*John C. Hogan* and *Thomas S. Grant,* for appellants.
*L. B. Sulgrove,* for respondent.

## On Rehearing.

STEINERT, J.—This case was originally argued before this court on October 13, 1931. The Departmental opinion was filed December 2, 1931, and is reported in 165 Wash. 367, 5 P. (2d) 505. Thereafter, a petition for rehearing was granted, and argument was heard *En Banc* on May 23, 1932. Subsequently, a second rehearing *En Banc* was called for by us, and argument was had on June 30, 1932. The facts in the case are fully, fairly and adequately stated in the original opinion. This obviates a further general statement.

Three assignments of error are presently before us. The first assignment involves the refusal of the trial court to give appellants' requested instruction No. 11, reading as follows:

"You are instructed that it is the duty of a traveler upon a public highway in approaching a railway crossing to use reasonable caution and care for his safety. He must, in approaching said crossing, look, and listen. He must select a place for observation where such observation will be effective, and if the presence of obstructions interferes with his hearing or his seeing the approaching car, this emphasizes his duty to use caution.

"If you find, therefore, from the evidence that the plaintiff, in approaching said crossing, did not look and listen, or did not select a place for observation where such observation would be effective, and that by reason thereof, the collision occurred and the plaintiff sustained the injuries of which he complains, then the plaintiff would be guilty of contributory negligence as a matter of law and cannot recover, and your verdict should be for the defendants."

Although this question was argued, both in the original brief and orally, it was not specifically referred to in the former opinion. Appellants now suggest that it may have been overlooked. We may say that it was not overlooked, and, we think, the opinion reflects its consideration. It was disposed of, however, in a general way only, as being without merit. Upon rehearing *En Banc*, we have again considered this assignment of error, and will now discuss it specifically.

We have repeatedly stated that the general rule regarding the standard of care to be exercised by those traveling upon a highway is that they must exercise a reasonable care under the existing circumstances. We have, in many of our decisions, given judicial expression to what is commonly and currently accepted as a well-known fact, i. e., that a railroad crossing is a proclamation of danger, and that those who propose to enter its zone must govern themselves accordingly.

Recognizing this principle, we have added to the usual rule of "reasonable care under the circumstances," the specific requirement that the traveler approaching a railroad crossing must look and listen. Accompanying this statement of the rule is the added requirement that the observation must be made at a point or from a position where it would be effective. *Johnson v. Washington Water Power Co.,* 73 Wash. 616, 132 Pac. 392; *Bowden v. Walla Walla Valley R.*

*Co.,* 79 Wash. 184, 140 Pac. 549; *McKinney v. Port Townsend & Puget Sound R. Co.,* 91 Wash. 387, 158 Pac. 107; *Golay v. Northern Pac. R. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848; *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512; *Miller v. Oregon-Washington R. & N. Co.,* 128 Wash. 292, 222 Pac. 475; *Beckwith v. Spokane International R. Co.,* 120 Wash. 91, 206 Pac. 921; *Keene v. Pacific Northwest Traction Co.,* 153 Wash. 310, 279 Pac. 756; *Mattingley v. Oregon-Washington R. & N. Co.,* 153 Wash. 514, 280 Pac. 46.

This is undoubtedly the rule with respect to those who operate, or are in charge of, the vehicle that attempts the crossing. The appellants contend that the same rule should apply to a passenger in the vehicle. The following cases are cited in support of this contention: *Cable v. Spokane & Inland Empire R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Sadler v. Northern Pac. R. Co.,* 118 Wash. 121, 203 Pac. 10; *Hoyle v. Northern Pac. R. Co.,* 105 Wash. 652, 178 Pac. 810; *Golay v. Northern Pac. R. Co., supra; Keene v. Pacific Northwest Traction Co., supra; Beckwith v. Spokane International R. Co., supra; Benedict v. Hines, supra; Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20; *LeDoux v. Alert Transfer & Storage Co.,* 145 Wash. 115, 259 Pac. 24; *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976.

In the *Golay, Keene, Beckwith* and *Benedict* cases, the injured persons were drivers of the automobiles involved in the respective collisions. In the *Hoyle* case, the driver had momentarily surrendered the wheel to his employer, who was driving for the time being; he was held to be guilty of contributory negligence as a matter of law. In the *Bauer* case, which involved a collision between two automobiles, the court

announced the rule that a passenger is not required to warn or caution the driver unless a reasonably prudent person, in the exercise of due and ordinary care, would have warned or cautioned him, and attempted to dissuade him from his negligent conduct.

In the *LeDoux* case, which arose out of a collision between an automobile and a motorcycle on which the plaintiff was riding as a companion, the court held that the plaintiff was contributorily negligent, as a matter of law, in knowingly riding upon a motorcycle which had a defective light, in violation of positive law. In the *Rhodes* case, which involved a collision between two automobiles, it was conceded that the negligence of the driver was imputed to the passenger, and the court specifically adverted to the fact that no exception to the instruction advising the jury to that effect had been taken. Most of these cases, we think, are inapplicable to the present situation, and those that are do not support appellants' contention.

In the *Cable* case, the court recognized the rule that, ordinarily, the contributory negligence of the driver is not imputable to the passenger, unless the latter has, or is in a position to have, and exercise some control over the driver, but the court nevertheless held that the plaintiff, a girl seventeen years of age, was subject to the general rule of "stop, look and listen," and in the absence of any showing that she endeavored to stop the horse which her father was driving, or do something for her own protection, or that she was prevented from so doing, she would be subject to the rule. However, the strict application of the rule was later ameliorated by this court in *Wilson v. Puget Sound Electric Railway,* 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044, in the following language:

"It would certainly be an extreme case where the court would be warranted in announcing, as a rule of

law, that a passenger in an automobile was required to warn, advise, or direct its driver, or to apply to such passenger the doctrine of 'stop, look and listen.' We are impressed with the statement of the learned counsel of the respondent, that ordinarily the only obligation on such passenger is to 'sit tight.'"

It is but fair to say that in the *Sadler* case, *supra,* this court, referring to the *Wilson* case, repudiated the "sit tight" doctrine except in emergency cases, although it did not overrule the decision itself.

The *Sadler* case was a rather extreme one in point of fact. There the automobile was approaching a crossing on an up grade at the rate of three miles per hour, in broad daylight; for a distance of one hundred feet from the railroad crossing a clear view could be had for one thousand feet along the track. The driver testified that there was nothing to prevent the passenger from seeing the train, but that the passenger did not call his, the driver's, attention to the fact that the train was approaching. The court held that, under these circumstances, the passenger was guilty of such negligence, as a matter of law, as to preclude recovery by him. That case is not controlling here, where the question, in our opinion, is one of fact and not one of law.

In the recent case of *Gillum v. Pacific Coast R. Co.,* 152 Wash. 657, 279 Pac. 114, the court seems to recognize the principle that the duty to look and listen depends somewhat on the opportunity so to do, and that this presents a question for the jury.

We think a question of fact for the jury to determine was here involved, and since it was, we do not believe that the proposed instruction was a proper one. It only partially stated the rule. While it prescribed the primary duty of the passenger to look and listen, it did not prescribe the passenger's subsequent duty.

The mere looking and listening would not of itself have avoided the collision, but would only call for the performance of a subsequent duty by the passenger.

The subsequent duty of the passenger, however, was not an imperative one to warn the driver, regardless of the circumstances, but was merely to act as a reasonably prudent and cautious person would have done under similar circumstances; that is, if a reasonably prudent and cautious person, in the exercise of ordinary care, would have warned or cautioned the driver or attempted to dissuade him from his negligent conduct, his failure so to do would then constitute negligence on the part of the passenger. *Bauer v. Tougaw, supra.* The requested instruction was devoid of any suggestion regarding the exercise of reasonable care by the respondent under the circumstances. It was, therefore, faulty, and it would have been improper to give it in its proposed form. The court was not in error in refusing to give the requested instruction.

The next assignment of error is to the giving of the court's instruction No. 8, reading as follows:

"One operating a train or a speeder at a railroad crossing, such as the defendant, Aubert, was operating, *must give the warning required as heretofore instructed in Instruction No. 7, and if he does he* has a right to assume, until the contrary becomes evident, that one approaching the tracks in an automobile, will give the speeder the right of way, and the operator of the speeder is not required to attempt to bring the speeder to a stand still but has the right to assume, until the contrary appears, that the occupants of such automobile will use reasonable care for their protection, and will give the speeder the right of way to which it is entitled under the law; and that one in charge of such speeder is not to limit or stop his speeder, until it is apparent that those in the automobile, about to cross the tracks, are not aware of its

approach or do not intend to give it the right-of-way.'' (Italics ours.)

The portion italicized was specifically excepted to by appellants, and is now complained of by them. Eliminating the italicized portion, the instruction is in the exact form requested by the appellants.

We confess that this instruction has occasioned us considerable difficulty, and we wish to say, at the outset, that the instruction is not to be commended, but is disapproved for general use. We say this not only because of, but also despite, the ultimate conclusion that we have reached in this case.

Counsel advance three grounds of attack upon the instruction: (1) that it was contrary to law; (2) that it prescribed conflicting rules of conduct, and (3) that it was a comment upon the evidence. We will admit that as criticisms these objections have some foundation, in part at least.

That the instruction was contrary to law may be admitted. The right of way of the appellants was an unequivocal one, and was not conditioned upon their first giving a warning signal. It was a right that the appellants had under the law, and not one to be acquired by them upon the performance of preliminary conditions. *Sadler v. Northern Pacific R. Co., supra; Mouso v. Bellingham & Northern R. Co., supra.* Whether, in a given case, the operator of a locomotive, or its equivalent, may be so utterly and flagrantly negligent under the existing circumstances as to deprive him of the right of way, we need not here determine. The evidence in this case does not present such a situation. We conclude, however, that the instruction was contrary to law.

As to the second ground of attack, we also admit that the instruction may be said to conflict, to a certain extent, with other instructions in the case,

but we do not admit that it prescribed a conflicting rule of conduct. As to the duty of the appellants, the jury was instructed that the appellants were required to give the warning exacted by the statute, but that if they did give such warning they would not be guilty of negligence. As to the duty of the respondent, the jury was told by instruction No. 13, that he must exercise reasonable care for his safety, and that, if the circumstances required a reasonably prudent person to warn the driver concerning the operation of the automobile, it would be respondent's duty so to do. Instruction No. 16 told the jury that, if the crossing was obstructed, it was the duty of the respondent to exercise a degree of caution and care in exact proportion to the danger. Instruction No. 17 cast upon the respondent the knowledge that the appellants had the right of way and could not readily stop their speeder; and that, if the crossing was obstructed, the caution required of the respondent was in exact proportion to the danger. Instruction No. 18 advised the jury that the respondent could not close his eyes to apparent danger nor rely upon the driver for protection, but must exercise reasonable care for his own safety.

The instruction complained of, and quoted above, did not by its terms increase the duty imposed upon the appellants, nor in any sense or degree minimize the duty required of the respondent. It inferentially, though not categorically, conditioned the right of way upon their giving a warning signal, but it did not thereby cast any greater burden upon the appellants. The rule of the right of way of an engine or train does not in all cases bear immediately upon the question of negligence in its operation. In many cases, it bears merely upon the right of the engineer to assume that the traveler will perform certain duties cast upon him by law, and relieves him of the duty to limit or

stop the locomotive until it is apparent that the right of way is disputed.

In the present case, for instance, while the complaint charged the appellants with negligence in the rate of speed, the absence of sufficient brakes, lack of control, and failure to stop when it was apparent that the respondent was about to cross the tracks, yet the only negligence relied on under the evidence, and sharply defined therein, was the absence of a light on the speeder and the failure to sound a warning. There is no contention under the evidence that the appellants did not have the right of way, nor that they violated the ''last clear chance'' rule. The real issues which the jury had to determine were whether the speeder was lighted and whether warning signals were given. The instruction can not be said, therefore, to prescribe conflicting rules of conduct by which the rights and duties of the parties are to be measured.

█ The appellants' third attack upon the instruction is that it was a comment on a question of fact, in violation of Art. IV, § 16, of the constitution, which commands that judges shall not charge juries with reference to matters of fact, or comment thereon. There is no contention that there was a direct or express comment, but only an inferential one. Counsel say that the engineer had the right to assume that the automobile driver would look and listen as required by law; that, by this instruction, the right to this assumption was made to depend entirely upon whether an audible signal was given, and that the court thereby adopted respondent's theory of the evidence that the light was not burning and that the speeder was not visible.

While the provision of the constitution is rather strictly construed, its purpose is simply to prevent the judge from influencing the jury in their findings

upon questions of fact. While the judge may not state or assume in his charge that any particular fact is conclusively proven, yet, in order to render the statement an assumption violative of the constitutional mandate, it must be with reference to some fact adverted to by the judge in his instructions either directly or in such a way as to lead, or tend to lead, the jury to infer that such fact was an established one.

We do not believe that the language in this instruction is subject to such criticism or in any way productive of such result. It is only by a refined, technical reasoning and analysis that one could arrive at appellants' interpretation of the instruction; it is difficult to see how the jury would ever place such construction upon it. The judge made no statement as to the evidence which had been introduced, nor did he give any indication of his own opinion as to any fact in evidence or suggest any conclusion that the jury should arrive at upon any issue of fact. In short, he made no "comment thereon." Had the objectionable language been omitted and the instruction been given just as appellants requested it, it would still have been subject to criticism and probably in a greater degree. Under appellants' reasoning, the instruction would have assumed, not only that the light *was* burning and that the speeder *was* visible, but also that the warning signal *had been given.* If appellants' contention is well founded, then it would be almost impossible for courts to give instructions free of error unless they included in each instruction every material element in the case.

It is not every error that will call for a reversal, for otherwise a trial would be a well-nigh fruitless task. To occasion a reversal, the error must be prejudicial, and so far as conflicting instructions are concerned, they must be misleading. We are not only unable to say that this instruction was misleading, but

we are satisfied to say affirmatively that it was not misleading or prejudicial.

Appellants' final assignment of error involves the alleged excessiveness of the verdict. It is true, the verdict was unusually large. But that, of itself, does not constitute ground for reversal. If we were sitting as triers of the fact, we might, under the evidence, have found in a substantially lesser amount, but that was a matter peculiarly within the province of the jury to determine. Before we can interfere, it must appear that the verdict is so far inadequate, or so grossly excessive, as to be without support in the evidence, or else that the verdict was the result of some extrinsic consideration, such as bias, prejudice or passion. *Sherrill v. Olympic Ice Cream Co.*, 135 Wash. 99, 237 Pac. 14; *Reeks v. Seattle Electric Co.*, 54 Wash. 609, 104 Pac. 126; *Dorian v. Boone,* 152 Wash. 681, 279 Pac. 107; *Gillum v. Pacific Coast R. Co.*, 152 Wash. 657, 279 Pac. 114; *Woods v. Greenblatt,* 163 Wash. 433, 1 P. (2d) 880.

There is ample evidence in the record to support the amount of the verdict, and we are unable to say that the jury was affected by bias, passion or prejudice.

We conclude that the Departmental opinion was correct, and we therefore adhere to it.

PARKER, MAIN, MITCHELL, and HERMAN, JJ., concur.

TOLMAN, C. J. (dissenting)—I am still of the opinion that the verdict reflects passion and prejudice, as indicated in my dissent to the Departmental opinion. Moreover, I am now convinced that instruction numbered eight as given was both erroneous and prejudicial. I therefore again dissent.

BEALS, J., concurs with TOLMAN, C. J.

MILLARD, J. (dissenting)—I am of the view that instruction No. 8 was erroneous and prejudicial, and constituted a comment on the evidence.

HOLCOMB, J., concurs with MILLARD, J.

