[No. 24243. Department One. February 6, 1933.]

ROBERT NEWMAN, *Respondent*, v. S. BELA COGSHALL
et al., *Appellants*.[1]

*Whittemore & Truscott,* for appellants.
*Burkey & Burkey,* for respondent.

MILLARD, J.—About three forty-five p. m., September 8, 1931, defendants' auto delivery truck, while operated by one of defendants' employees, collided, within a street intersection of the city of Tacoma, with an automobile in which the plaintiff was riding as a guest. Plaintiff brought this action to recover for personal injuries alleged to have been sustained by him as a result of that collision. Trial of the cause to a jury resulted in a verdict for five thousand dollars in favor of the plaintiff. From a judgment on the verdict, the defendants have appealed.

[1]Reported in 18 P. (2d) 850.

The assignments of error present two questions: (1) whether the court erred in refusing to give certain requested instructions; and (2) whether the verdict is excessive.

The accident occurred at the intersection of Mullen street and north Forty-second street. Mullen street runs north and south, and north Forty-second street intersects it at right angles. Neither street is an arterial highway. Both streets are graveled. The gravel strip on Mullen street practicable for travel is twenty feet wide and the width of the gravel strip on north Forty-second street is thirty feet. North Forty-second street has a descending grade from Gove street, one block east of Mullen towards Mullen. The intersection of north Forty-second and Mullen streets is almost level. South of the intersection Mullen street ascends in a grade of approximately five per cent.

Arthur Caillier was driving his Maxwell coach south on the west side of Mullen street, hence was in the favored position. His guests were respondent, who was in the rear seat of the coach, and respondent's son, who was sitting in the front seat with Caillier. At the northeast corner of the intersection were trees and brush which obstructed the view from north Forty-second street north along Mullen street and the view from Mullen street east along north Forty-second street; that is, while one proceeding south on Mullen street could, when seventy feet north of the intersection, see west-bound traffic approaching the intersection on north Forty-second street, it was difficult for west-bound travellers to see south-bound traffic until near the intersection; and it was likewise difficult for south-bound travellers on Mullen street, when less than seventy feet north of the intersection, to see west-bound traffic on north Forty-second street until a short distance from the intersection.

When seventy feet north of the intersection, respondent and Caillier looked to the right and to the left but no traffic was in sight. Caillier was traveling at the rate of twenty to twenty-five miles an hour—a legal speed. Immediately prior to entering the intersection, Callier diminished his speed to twelve to fifteen miles an hour, and at that rate proceeded through the intersection. Respondent and Caillier kept a constant lookout for approaching traffic. Neither saw appellants' delivery truck until Caillier's automobile had entered the intersection.

At that time, appellants' truck was about ten feet from the cross-walk approaching the intersection. Appellants' truck was proceeding west on the north side of north Forty-second street, therefore it was in the disfavored position. The evidence is in conflict as to the rate of speed of the appellants' truck when it approached the intersection and the speed at which it traveled within the intersection. It fairly appears, however, that neither vehicle was violating the speed laws. Appellants' driver testified that his truck was ten feet east of the intersection when he first saw Caillier's automobile, which was then ten feet north of the intersection.

Appellants' employee swerved the truck to the left and struck Caillier's car when it had arrived at the southwest corner of the intersection; in fact, Caillier's automobile had almost cleared the intersection. It is clear that, had appellants' driver yielded the right of way to Caillier, who was entitled thereto, the accident would not have happened. Any question as to the negligence of appellants is foreclosed by the jury's verdict.

The first and second paragraphs of requested instruction No. 11 were given by the court in its instruction No. 4. The third paragraph of requested

instruction No. 11 would not have been a proper instruction in this case. The third paragraph reads as follows:

"If you believe that the driver of the automobile in which plaintiff was riding was violating the provisions of said traffic law at the time of the collision complained of and that plaintiff knew of such violations and that he acquiesced therein and did not remonstrate with the driver, and if you further believe that his acquiescence and failure to remonstrate with the driver materially contributed to the injuries complained of, then plaintiff was guilty of contributory negligence and can not recover."

There is no evidence that, prior to entering the intersection, Caillier was driving at an illegal rate of speed. If "violating the provisions of said traffic law at the time of the collision" within the intersection, that is, while traveling a distance of thirty feet, there would have been no time to remonstrate. Respondent would not have had an adequate opportunity to control the situation for safety. To enforce the observance of such a rule as that for which the appellants contend would, employing the language in *Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20,

". . . not only impose too great an obligation upon passengers in automobiles, but would, in the practical operation of such vehicles, tend to confusion and possible disaster."

This was not a case of continuing negligence, where the passenger had the opportunity to warn the driver against his incautious acts and the opportunity to refuse to continue the journey if the driver refused a request to exercise more care. The jury was properly instructed by the court, as follows, as to respondent's duty in connection with appellants' defense of contributory negligence:

"You are instructed that the law does not impose upon a guest or invitee of the operator of an automobile the duty to direct or supervise the driver of the automobile in the operation of the car, but does require that he use reasonable care for his own safety, and if you find from the evidence that the plaintiff in this case, at the time of the accident, was riding· as a guest in Caillier's car, and did all that a reasonably prudent person, in the exercise of ordinary care, would do, under the circumstances in which he was situated, to protect himself, or to avoid the collision and injuries so received by him, if you find he was injured, then he would not be guilty of contributory negligence that would bar or prevent a recovery of damages from the defendant."

The instructions given by the trial court fully stated the legal questions involved, and carefully guarded all the rights of appellants. No error was committed in refusing to give the requested instructions.

■ Is the verdict of five thousand dollars excessive? At the time of the trial of this cause, fifteen months subsequent to the injury to respondent's spine, there was evidence that respondent was wholly incapacitated. Medical experts testified that respondent's disability was permanent. One physician testified that respondent was suffering from a thirty-five to fifty per cent permanent partial disability. There was medical testimony that an operation would probably be necessary, and that the grafting of a bone to the two ruptured vertebrae would result in rigidity and immobility in that portion of respondent's back.

The evidence amply supports the verdict. There is nothing in the record to indicate that the jury was actuated by passion or prejudice in returning a verdict for the amount it did; therefore, we will not interfere with it.

"Before we can interfere, it must appear that the verdict is so far inadequate, or so grossly excessive, as

to be without support in the evidence, or else that the verdict was the result of some extrinsic consideration, such as bias, prejudice or passion." *Haaga v. Saginaw Logging Co.,* 169 Wash. 547, 14 P. (2d) 55.

The judgment is affirmed.

BEALS, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.