[No. 23174. Department Two. December 11, 1931.]

ELMER BLAZER, *a minor, by his guardian ad litem Alma Tweed, et al., Respondents,* v. PHILIP FREEDMAN *et al., Appellants.*[1]

*Preston, Thorgrimson & Turner* and *Robbins & Rickles,* for appellants.

*Meier & Meagher,* for respondents.

HOLCOMB, J.—Respondents, suing by guardians ad litem, on February 7, 1930, were, respectively, fifteen years past and seventeen years past, of age. They sue to recover damages for injuries occurring, in daylight, on February 7, 1930, when riding as guests in a wreck-

[1]Reported in 5 P. (2d) 1031.

ing car owned by appellants and driven by one Sunrider, an employee of appellants. The wrecking car collided with another automobile at the intersection of Nickerson street and west Dravus street, in Seattle.

Sunrider was directed to drive the wrecker to get a disabled car at 4119 Phinney avenue, Seattle, and tow it back to the place of business of appellants for repair. Respondents were looking for employment, and rode with Sunrider for the purpose of soliciting employment at the Ballard Auto Wrecking Company's place of business, which was some distance off from the route to and from 4119 Phinney avenue. They had the consent of one or both of appellants. The wrecker car, driven by Sunrider, proceeded north from the place of business of appellants on Broadway, down Tenth avenue, north to University bridge, then west up Fortieth street, then north on Phinney avenue to No. 4119. Upon reaching that place, it was found that the disabled car was locked, and by reason thereof the car could not be moved.

Sunrider then, accompanied by respondents, drove the wrecker to a drugstore in the Ballard district for the purpose of telephoning his employers for instructions. He was unable to get in touch with them by telephone at this particular place, and drove on to a gasoline filling station, where he stopped and phoned again. This time he successfully got in touch with his employers by telephone. From this point he drove the wrecker to the Ballard Wrecking Company, where Blazer got out of the car for the purpose of seeking employment. He was unsuccessful in obtaining work and returned to the wrecker in a few minutes. The wrecker was then driven from there across the Ballard bridge back toward Broadway by way of Nickerson street, which street follows along the southerly bank of the Lake Washington canal from the Ballard bridge

to the Fremont bridge. While so proceeding, and when it had reached a point on Nickerson street where it intersects with west Dravus street, the wrecker was operated in such a manner as to cause it to collide with a car coming from the opposite direction, the wrecker and respondents all being badly injured.

Respondents testified that Sunrider, in the operation of the wrecker car during the trip, at various times, operated it in a foolhardy manner, particularly when meeting cars coming from the opposite direction, in that he was swinging the wrecker out toward the approaching car and then would swing it back again in its proper course, and at high and dangerous speed. They testified also that they protested to Sunrider and objected to the manner in which he was driving the wrecker car; that, when such protests were made, Sunrider promised to drive the car in a more careful manner, but would soon disregard his promises.

The distance from the place of business of appellants to the place where the disabled car was to have been obtained, was 6.2 miles, according to one speedometer, and 4.1 miles, according to another. Appellants' wrecker covered 8.3 miles in going from appellants' place of business to the place of this accident. After leaving the drugstore where Sunrider got in communication with his employers, he operated the wrecker car in the same manner, by dodging in and out in front of approaching cars four times or more on that part of the trip. During the trip from the Phinney avenue address to the Ballard bridge, Sunrider dodged in and out in front of approaching cars about five times. After they had crossed the Ballard bridge, Sunrider again drove recklessly, going even faster, turning in front of cars coming toward him and then turning out of their way, five or ten times. At the time of the collision he was traveling, according

to one of the respondents, about fifty miles per hour, and, according to the other, from forty to sixty miles per hour.

Although respondents protested against the manner in which the wrecker was being driven, neither of them made any effort to discontinue riding, but stayed in the car, knowing that the driver's promises to desist meant nothing. The stop at the Phinney avenue address consumed about ten minutes. In all, four stops were made after Sunrider had started from his employers' place of business before the collision, each of some minutes duration, and neither of respondents made any effort to leave the car at any of the stops, nor did either respondent ask to be let out of the car.

Besides the general denials, appellants affirmatively alleged three defenses, two of which are now unimportant, but the third was that of contributory negligence on the part of respondents themselves. Appellants concede that the question of negligence on the part of the employee of appellants was sufficient to go to the jury, but insist that the contributory negligence of respondents themselves was conclusively shown, and that their motion for nonsuit, or for judgment notwithstanding the verdict, should have been granted.

Respondents insist that whether the contributory negligence of respondents proximately contributed to their injury, was a question for the jury, upon which the minds of reasonable men might differ; with which view the trial court agreed.

The trial judge said that the conduct of the driver of the car of appellants evinced a reckless spirit, but at the same time boys of the age, character and understanding of the minor plaintiffs could not be held, as a matter of law, to have regarded this conduct in the same manner as would more mature minds.

In determining whether or not respondents

were conclusively guilty of contributory negligence, we observe our rule that all evidence and fair inferences from the evidence must be considered in the light most favorable to the party against whom the motion is directed. *Dailey v. Phoenix Investment Co.,* 155 Wash. 597, 285 Pac. 657; *Hansen v. Continental Casualty Co.,* 156 Wash. 691, 287 Pac. 894.

It is to be noted that the route taken by the driver of appellants' car was not in an isolated section of country, but was in a populous part of a city, over well traveled streets, and where means of transportation and communication were frequent. Respondents were youths of ordinary intelligence, and of years of some discretion, although not adults. They observed the wantonly reckless conduct of appellants' driver about twenty times, one of them stated, and yet remained in the car. We have said that,

"The rule sometimes announced that all that is incumbent upon a passenger in an automobile is to 'sit tight' is euphonious and at the same time erroneous. It depends upon what a reasonably prudent and cautious man would do under the same circumstances." *Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20.

After observing the reckless conduct of the driver of the wrecker on about twenty occasions, and knowing that his promises to desist therefrom were not fulfilled, no reasonably prudent and cautious man would have remained in the car when he had several opportunities to leave it. In *Hager v. Lenzi,* 152 Wash. 611, 278 Pac. 673, where plaintiff was a boy fifteen years old, who knew that his companion, another youth, had stolen the car from his father, and that this boy was drinking and driving recklessly, but persisted in staying with the enterprise, although he had had several opportunities to refuse to proceed further, we

held the plaintiff guilty of contributory negligence. In that case, the trial court had granted a nonsuit at the close of plaintiff's case, which was affirmed by this court, and we observed:

"We think that the mere statement of the facts in this case sufficiently shows many reasons why appellant, as a matter of law, should not be permitted to recover."

The facts in this case bring it within the rule of the *Hager* case.

Respecting the youth and lack of discretion of respondents, it is apparent that they were well aware of the danger because they protested frequently. This they knew and appreciated as well as if they had been adults. They were sufficiently aware of the danger that they should have left the car when the car was stopped at the several places by the driver, or, if necessary, should have asked the driver to stop and let them leave the car.

Besides the *Hager* case, *supra,* in the following cases the injured minors were held to accountability for contributory negligence:

*Cable v. Spokane & Inland E. R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, where the injured plaintiff was seventeen years of age; *Olson v. Payne,* 116 Wash. 381, 199 Pac. 757, where the injured plaintiff was twelve years of age; *Blair v. Kilbourne,* 121 Wash. 93, 207 Pac. 953, where the injured plaintiff was nine years old; *Harris v. Spokane, Portland & S. R. Co.,* 123 Wash. 274, 212 Pac. 187, where the minor plaintiff was between fifteen and sixteen years of age; *Shutz v. Edgerton,* 126 Wash. 128, 217 Pac. 707, where the minor plaintiff was nearly thirteen years of age; *Masterson v. McGoldrick Lumber Co.,* 128 Wash. 1, 221 Pac. 990, where the injured plaintiff was thirteen years of age.

As to whether or not the minds of men might reasonably differ upon the question of the contributory negligence of the respondents, the facts in this case plainly distinguish it from cases relied upon by respondents:

*Dillabough v. Okanogan County,* 105 Wash. 609, 178 Pac. 802; *Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20; *Garrow v. Seattle Taxicab Co.,* 135 Wash. 630, 238 Pac. 623, 45 A. L. R. 293; *Wayson v. Rainier Taxi Co.,* 136 Wash. 274, 239 Pac. 559, 45 A. L. R. 290; *Gillum v. Pacific Coast Railroad Co.,* 152 Wash. 657, 279 Pac. 114; *Sanderson v. Hartford Eastern R. Co.,* 159 Wash. 472, 294 Pac. 241; *Zelinsky v. Howe,* 163 Wash. 277, 1 P. (2d) 294; *Hemington v. Hemington,* 221 Mich. 206, 190 N. W. 683; *Munson v. Rupker,* 148 N. E. (Ind. App.) 169.

Of all those cases, the one most nearly like this upon its facts is the *Zelinsky* case, and the Michigan and Indiana cases. The Indiana case is very similar to the *Zelinsky* case, *supra.* The distinction between this and the *Zelinsky* case and the two similar cases cited, lies in the fact that Zelinsky, a guest rider, traveling in the car of Howe, owner and driver, would protest at the speed of the owner and driver, upon which the driver would reduce his speed for a time. They were driving mostly upon country highways. The accident occurred on a curve on a country highway after only a few seconds of excessive and unlawful rate of speed on the part of the driver of the car. Under all those circumstances, we held that the question of whether the injured party was guilty of contributory negligence in failing to leave the automobile at any time, and that such want of reasonable care proximately contributed to his injury, was a question for the jury. We do not consider that and similar cases applicable here.

See, also, *Sharp v. Sproat,* 111 Kan. 735, 208 Pac. 613, 26 A. L. R. 1421, cases there cited, and notes.

On this record we are compelled to conclude that the motion of appellants for nonsuit or the motion for judgment, n. o. v., should have been granted.

The judgment is reversed, with instructions to dismiss the action.

TOLMAN, C. J., BEALS, MAIN, and MILLARD, JJ., concur.