[Civil No. 3128. Filed April 9, 1932.]

[9 Pac. (2d) 1015.]

SOL M. FRIEDMAN and LEAH FRIEDMAN, Husband and Wife, Appellants, v. CARRIE FRIEDMAN, Administratrix of the Estate of BERT L. FRIEDMAN, Deceased, Appellee, and SOL M. FRIEDMAN, Appellant, v. CARRIE FRIEDMAN, Administratrix of the Estate of BERT L. FRIEDMAN, Deceased, Appellee.

Mr. T. E. Scarborough, Messrs. Ingraham & Farmer and Messrs. Struckmeyer & Jennings, for Appellants.

Messrs. Elliott & Snell, for Appellee.

LOCKWOOD, J.—This is a consolidation of two cases tried in the superior court of Maricopa county. Sol M. Friedman and Leah Friedman, his wife, hereinafter called appellants, filed separate actions for damages for personal injuries claimed to have been sustained by them through the negligence of Bert L. Friedman, hereinafter called appellee, in an automobile accident which occurred on March 9, 1930, on the public highway in Imperial county, California, while they were riding as his guests. The two actions were consolidated for the purpose of trial, and, at the close of appellants' case, appellee moved that the jury be instructed to render a verdict in his favor on the ground that no reasonable man could draw any inference from the evidence except that appellants were guilty of contributory negligence. The court, after listening to the argument of counsel, stated it was of the opinion that any negligence of appellee was attributable to appellants under the testimony, and therefore instructed the jury to return a verdict in favor of appellee. After the usual motion for new trial was overruled, this appeal was taken. Since the record herein was filed appellee has died, and

Carrie Friedman, his administratrix, has been substituted as a party.

The particular negligence charged in the complaint is as follows:

"That the said accident and injury was the result of and caused by the gross negligence of the defendant in that at the time the defendant invited the plaintiff to ride in said automobile and at the time of said accident, the engine head, cylinder block, piston rings and gaskets in said automobile were old, badly worn and leaky, and the ignition system and wiring on said automobile were old, worn and not properly insulated, and the gasoline and oil lines on said automobile were old, worn and leaky and the brakes on said automobile were old, worn and not properly adjusted, all of which was well known to the defendant, at the time he invited the plaintiff to ride in said automobile and at the time of said accident, and that the plaintiff did not know, and had no means of knowing of said defective condition of said automobile; and that by reason of said defects and condition of said automobile, the said automobile was unsafe and dangerous to drive upon the public highways at more than twenty miles an hour, or at all. That at the said time and place the defendant, knowing of said defects, negligently drove said automobile at an excessive, unlawful, careless and reckless rate of speed, to-wit, sixty-five (65) miles per hour, over the protest and against the wishes and consent of the plaintiff, thereby causing said automobile to catch on fire, and that by reason of said fire and said high rate of speed the defendant became excited and caused said automobile to swerve to one side and off the main traveled portion of the highway and turn over, doing great bodily injury to the plaintiff. . . . "

The evidence, taken in the strongest possible manner in favor of appellants, shows that appellee had invited appellants to take a trip with him from Yuma to Calexico, California. As soon as they got fifteen or twenty miles out of Yuma, appellee began driving at the rate of about fifty-five to sixty-five miles per

hour. Appellants objected most strenuously to this high rate of speed, and appellee promised to slow up, and did so, but in a few miles again began speeding. Between Yuma and Calexico this same performance was repeated at least two or three times—appellee speeding up, appellants objecting, appellee slowing down for a short time, and again speeding up over the objection of appellants. Appellee's father and another guest were also in the car, and they, too, protested. Shortly after leaving Calexico on the return trip, the same thing began again, appellee speeding up, appellants or some of the other inmates of the car objecting to the excessive speed with the result that appellee would for a short time lessen his speed and then again increase it. Some eight or ten miles out of El Centro, on the return trip, and while the automobile was running at a high rate of speed, it burst into flames, ran off the road, and overturned, injuring appellants.

The accident occurred in the state of California, and, while an action of this nature is transitory, and since Maricopa county was the residence of appellee, the superior court of such county had jurisdiction thereof, the liability of appellee should be determined, not by the law of Arizona, but by that of California. This is true as to the right of recovery for negligence. *Hall* v. *Hamel,* 244 Mass. 464, 138 N. E. 925; 45 C. J. 1046. It is also true as to the defense of contributory negligence. *Central Vermont R. Co.* v. *White,* 238 U. S. 507, Ann. Cas. 1916B 252, 59 L. Ed. 1433, 35 Sup. Ct. Rep. 865; *Keane Wonder Mining Co.* v. *Cunningham,* (C. C. A.) 222 Fed. 821; *Caine* v. *St. Louis & S. F. R. Co.,* 209 Ala. 181, 32 A. L. R. 793, 95 South. 876; *Long* v. *Atlantic Coast Line R. Co.,* (C. C. A.) 238 Fed. 919; *Riley* v. *Kansas City Southern Ry. Co.,* 256 Mo. 596, 165 S. W. 1043. For this reason it is unnecessary that we consider whether the provisions

of article 18, section 5, of the Constitution of Arizona would apply to an accident occurring under these circumstances within the state of Arizona.

The courts of California have had before them repeatedly the question as to the duty of a guest riding in an automobile when the driver is clearly guilty of negligence. The rule prevailing in that state is stated by the court in *Curran* v. *Earle C. Anthony, Inc.,* 77 Cal. App. 462, 247 Pac. 236, as follows:

"The duty of a passenger to remonstrate against excessive speed or to withdraw from the vehicle, a reasonable opportunity therefor being afforded, is not absolute, the question whether by failing to do either he is wanting in ordinary care being dependent upon the circumstances of the particular case. *Dowd* v. *Atlas T. & A. Service Co.,* 187 Cal. 523, 202 Pac. 870. While one who knows, or should know, that the driver is carelessly operating the car must use ordinary care for his own safety, and it is incumbent upon him to take proper steps for his own protection, still whether by failing to protest against the course being pursued by the driver, or to leave the vehicle, constituted a want of ordinary care which proximately contributed to his injuries was a question of fact to be submitted to the jury, *unless from the evidence but one conclusion might reasonably be drawn. Nichols* v. *Pacific Elec. Co.,* 178 Cal. 630, 174 Pac. 319; *Thompson* v. *Los Angeles & San Diego Beach Ry. Co.,* 165 Cal. 748, 134 Pac. 709; *Parmenter* v. *McDougall,* 172 Cal. 306, 156 Pac. 460; *Fujise et al.* v. *Los Angeles Ry. Co.,* 12 Cal. App. 207, 107 Pac. 317." (Italics ours.)

This, of course, means that the trial court must primarily determine whether or not reasonable men could differ on this point, and, if it concludes that on the evidence the only conclusion which could reasonably be drawn is that plaintiff was lacking in ordinary care, it is its duty to instruct a verdict for the defendant.

There have been many cases before the courts of the different states involving the duty of a guest when an automobile was driven at an excessive speed, and the decision in each instance was based upon the facts of the particular case. Taking the entire record into consideration we are of the opinion that the conduct of appellee, as shown by the testimony of appellants themselves, was of such a nature that no reasonably prudent person would have continued riding with him up to the time of the accident. It is urged by appellants that, at the last warning given before the accident he had promised to drive more slowly, and that they were entitled to rely on that promise. If there had been but the one instance of excessive speed, there would have been much force in this contention, but the evidence was clearly that this was the fifth or sixth time at least he had promised to run at a reasonable speed, and had broken his word. There comes a time when a reasonably prudent man will not rely on the oft-broken word of another, and we think that point had been reached and passed in this case. *Blazer et al.* v. *Freedman et al.*, 165 Wash. 476, 5 Pac. (2d) 1031. Since, in our opinion, it was the duty of appellants to leave the car driven by appellee before the accident occurred, or to place some other driver in charge thereof, it is immaterial whether the proximate cause of the overturning of the car was the worn condition of the engine, the fire, or the excessive speed. Under the circumstances as detailed by appellants, they were at fault in being in the car at all at the time it overturned. We think it was the duty of the trial court to instruct the jury to return the verdict which it did, since it appears as a matter of law appellants were guilty of contributory negligence.

Such being the case, it is immaterial whether the court based its action on contributory or imputed

negligence. If the result reached is the only one which could legally have been reached, this court will not reverse the case because the trial court might have assigned the wrong reason for its action. 4 C. J. 664. Nor will we reverse it because appellee failed to plead contributory negligence and the law of California in that respect. While it is true that, in the absence of such a plea, the trial court should have assumed the law of California was the same as that of the forum, yet, if we send the case back for a new trial, such plea would undoubtedly be interposed at the new trial, and under the evidence the same result would necessarily be reached as now. Courts do not do a vain thing. 4 C. J. 1134.

The judgment of the superior court of Maricopa county is affirmed.

ROSS, J., concurs.

McALISTER, C. J., Dissenting.—I am unable to concur in the opinion of my colleagues because to my mind the facts do not show that by remaining in the car under the circumstances with which he was then confronted appellant was, as a matter of law, guilty of contributory negligence. While the rule in California, where the action occurred and by whose laws the rights of the parties are, according to the opinion, to be measured, is that a guest who knows the driver is carelessly operating the car must use ordinary care and take proper steps for his own protection, yet even there it is a question of fact to be submitted to the jury whether his failure to leave the car constituted a want of ordinary care which proximately contributed to his injury, unless the evidence is such that only one conclusion can be drawn from it. *Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462, 247 Pac. 236. Such is the law generally in the absence of a provision similar to that in Arizona making the de-

fense of contributory negligence a question of fact
to be left to the jury, but the evidence in this case
does not bring it within the one conclusion rule, be-
cause it is such that reasonable persons may draw
different inferences from it. To my mind it was
peculiarly the province of the jury and not of the
judge to determine whether by starting back to Yuma
in the car with appellee appellant exercised ordinary
care for his own safety. In *Zelinsky* v. *Howe,* 163
Wash. 277, 1 Pac. (2d) 294, the court uses this lan-
guage, the facts being quite similar to those in that
case:

"Nor would the trial court have been justified in
taking from the jury the question of the alleged con-
tributory negligence of the respondent and determin-
ing it against him as a matter of law. Notwithstand-
ing he was a guest, the respondent had on appropriate
occasions, and in a respectful manner, questioned the
propriety of the speed at which the car was being
driven at particular times, but whether sitting on the
rear seat of the car and failing to protest against
the conduct of his host, the driver, during the last
few seconds of the unlawful and increasingly exces-
sive rate of speed at that particular time and place,
or failing to leave the automobile at any time, either
one or both, constituted want of reasonable care,
proximately contributing to the injury, was a question
of fact for the jury."

It is true, according to the testimony of appellant,
Sol Friedman, that in going from Yuma to Calexico
appellee drove the car two or three times at a speed
of from fifty-five to sixty-five miles an hour, and that
each time he did this appellant protested against it.
It likewise appears that when those objections were
made he would slow down but instead of keeping his
car at a rate of speed satisfactory to appellant he
would soon resume an excessive one though the third
and last time he slowed down he let the car remain
at that speed until he reached Calexico. The father

also objected several times to the speed of the car and when they reached Calexico said to· appellee, "Give me the keys, Bert. If you don't give me the keys I won't ride back with you," whereupon appellee handed the keys to his father who remarked, "Mr. Bernstein will drive us back." But when they were ready for the return trip appellant asked his father for the keys promising that he would not go fast and relying upon this statement his father gave them to him. It was then about dark and they left immediately for Yuma. Eight or ten miles out appellee, notwithstanding his promise to run more slowly, began approaching the same rate of speed he had several times going down, whereupon appellant said to him, "Bert, we are not going to no fire; there is a bad corner up there," and just at this time the engine burst into flames; appellee removed his foot from the accelerator and applied the brakes; the car slackened its speed to forty or forty-five miles, hit the dirt shoulder and turned over. There was no opportunity between Calexico and the place of the accident for appellant to leave the car.

The evidence discloses further that the car was very defective but that none of its occupants knew this except appellee. Just a day or so before the accident Harry Karnosky, an automobile repair man of fifteen years' experience, after examining the car, told appellee, as he had a dozen times before, that it ought to be fixed or it would catch on fire and the latter said he was going to fix it but did not. Concerning its condition Karnosky testified: "The oil used to come back out the breather pipe and shoot all over the motor, squirt all over the motor and get on the exhaust pipe and couldn't help burn up." He and appellee had driven it to California some three or four weeks·before this and it began to shoot oil near Indio and caught on fire but they put it out. He declined appellee's invitation to go to Yuma on this

trip because, he told appellee over the phone, he did not want to walk home.

Earl C. Yanke, another automobile repair man of much experience, examined the car at appellee's request a short while before the accident and his testimony as to its condition was substantially the same as Karnosky's.

It was under these circumstances peculiarly a matter for the jury to decide under proper instructions whether appellant failed to use ordinary care for his own safety by remaining in the car. The fact that appellee had driven at an excessive rate of speed several times going to Calexico did not show necessarily that he would repeat this conduct on the return trip and, therefore, did not prevent appellant from relying on his promise to his father just as they were ready to start back to Yuma that he would not do so. It should be remembered that appellee had respected at least the third request of appellant before reaching Calexico by bringing the car to a lower speed and keeping it there and that the promise to his father that he would not drive so fast was made before the keys were returned to him. Besides, it was dark and appellant and his wife were sixty or seventy miles from home with no other way of reaching there that night so far as the record discloses. In view of this the jury should have been permitted to decide whether appellant and his wife were justified in relying on his promise to drive more slowly going back and not have had this power taken from it upon the ground that as a matter of law no reliance should have been placed in such a promise.

What happened after they left Calexico had no bearing on the question of appellant's right in this respect because they were only eight or ten miles out when the accident occurred, and the evidence of the witness, Charles Bernstein, is that there was absolutely no opportunity for appellant to leave the car

before that, because appellee made no stop whatever prior to the accident. He had reached a speed of fifty-five to sixty miles an hour and just as he did so appellant suggested to him that they were not going to a fire. As this statement was made, the motor burst into flames and a few feet farther on the car turned over. Clearly it was a matter for the jury to decide in this situation whether he was justified in relying on appellee's promise. The evidence would support a verdict that he was. "Where an intoxicated driver," says 5–6 Huddy, Cyclopedia of Automobile Law 268, note 62, "made no stops after a guest's protest against excessive speed, the latter was not contributorily negligent in remaining in the machine." In support of this statement the author cites *Trotter* v. *Bullock,* 148 Wash. 516, 269 Pac. 825. In *Shields* v. *King,* 207 Cal. 275, 277 Pac. 1043, the court in disposing of the contention that appellant, who had ample opportunity to insist that the car be stopped and to alight from it but failed to do so, was as a matter of law guilty of contributory negligence by remaining upon the ride, said:

"We cannot subscribe to this construction of the evidence. We do not believe that it was incumbent upon this elderly woman, even granting that the driver might have acceded to a request from her that he stop the machine, to alight therefrom alone upon a rainy highway at an isolated point, leaving to chance the possibility of reaching shelter or her destination by some other conveyance, in order to hold herself free from the charge of contributory negligence."

As said in *Krause* v. *Hall,* 195 Wis. 565, 217 N. W. 290:

"Should the host persist in his reckless driving, the guest may ask to be let out of the car, but that he should do so under all circumstances has never been held his duty as a matter of law, so far as we are advised. Here the plaintiff did protest, not once, but several times. She did not ask to be let out of the

car, and it was for the jury to say whether her failure in this respect constituted a want of ordinary care on her part. The jury might well have believed that the ordinary person would have taken chances on remaining in the car rather than be let out on a highway many miles from home on a dark night.''

There is another and, to my mind, more impelling reason why the court should not have held as a matter of law that appellant contributed to his own injury. Appellee undoubtedly handled the car in a manner so careless and negligent as to make him liable for an injury resulting therefrom, but whether it was the excessive rate of speed he was driving, or the defective motor, or both, that was the proximate cause of the accident the jury should have been permitted to decide, for certainly the evidence is not such that the court can say as a matter of law that it was caused by the excessive rate of speed the car was being driven. No one, as I see it, can read the record and not feel that it is just as probable that the immediate cause was the bursting into flames of the motor and the consequent excitement of appellee that caused the accident as it is that the excessive rate of speed caused it, and, if this be true, appellant could not have contributed to it, unless it be further true that the excessive rate of speed caused the motor to catch on fire. But again the evidence is such that a jury might have found that the defective condition of the motor and not the speed of the car was responsible for this. In fact, it is just as reasonable, if not more so, to say that it was, because the record discloses that the car had been driven more rapidly several times on the trip than it was going when it burst into flames and no serious consequences of any kind had followed, and the condition of the motor was so defective that it was liable to catch on fire any time, whether running moderately or excessively fast, a condition that appellant had no knowledge of what-

ever. Had there been no defect in the motor and had the rate of speed been the same as it was it is quite possible that no accident would have occurred, and since the excessive rate of speed at which the car was being driven could sustain a verdict for appellant against appellee, or produce a result to which he could have contributed, only if it brought about the accident and, therefore, constituted the proximate cause of the injury, it was peculiarly a question for the jury to decide whether appellant's injury was proximately caused by appellee's rapid driving or by his own act in remaining in the car when it was being so driven, for, to my mind, no one can say that only one inference can be drawn by a reasonable person from the facts of the case. 5-6, Huddy, Automobile Law 246; *Munson* v. *Rupker,* (Ind. App.) 151 N. E. 101; *Curran* v. *Earle C. Anthony, supra.*

The relations between a host and his guest on an occasion of this kind are reciprocal and the mere fact that one is a guest should not deprive him of his rights against a host who fails to take at least ordinary care for his safety while entertaining him. Hence, before it may be held that a guest who continues to ride with his host driving at an excessive rate of speed forfeits the right to recover damages from the latter it should be clear not merely that the act causing the injury compels one inference only, but also that it is of such a nature that he could at least have contributed to it.

The judgment should be reversed and the cause remanded for a new trial.