MILLER, Respondent, v. STEVENS, et al, Appellants.

(256 N. W. 152.)

(File No. 7589.   Opinion filed July 30, 1934.)

See, also, 62 S. D. 413, 253 N. W. 449.

*Bailey & Voorhees* and *M. T. Woods,* all of Sioux Falls, for Appellants.

*Tom Kirby,* of Sioux Falls, for Respondent.

CAMPBELL, J. In 1930 R. G. Stevens resided in Sioux Falls, S. D., and was the owner of an automobile. His son Richard (aged 18) was a student in the University of South Dakota, at Vermillion. His attendance there was pursuant to his father's wish and at his father's expense. Helen Miller (aged 20) was also a resident of Sioux Falls and a student at the same school. On Sunday, November 9, 1930, both Richard and Helen (having been at their respective homes over the week-end) were desirous of returning to Vermillion. Richard (with his father's permission and consent) was intending to use his father's automobile for the purpose of driving back to school and invited Helen to accompany him,

which invitation she accepted. Helen did not pay or agree to pay any compensation for the trip, and concededly her status was that of a mere guest. Both Helen and Richard were undertaking the journey with the object and purpose of getting back to the University to take up their respective scholastic duties. They left Sioux Falls about 4 o'clock Sunday afternoon in the R. G. Stevens automobile, driven by Richard, proceeding upon a through highway toward Vermillion. About an hour out of Sioux Falls an automobile driven by one Johnson, approaching upon a side road, failed to heed the stop sign before entering the through highway, and the two automobiles collided in the intersection, inflicting personal injuries upon both Helen and Richard. Helen thereafter instituted the present action against R. G. Stevens and Richard Stevens, seeking damages in the sum of $25,000.

The answer of the defendants denied any negligence, and further pleaded that the injury to plaintiff was caused solely by the negligence of Johnson; that if Richard Stevens was in any degree negligent plaintiff was contributorily negligent; and, further, that plaintiff had previously settled with Johnson for her damages by receiving from him the sum of $1,250, whereby she had been fully compensated.

On the issues thus joined the case was tried to a jury. At the conclusion of all the testimony defendants moved separately for directed verdict, which motions were denied. The jury found in favor of plaintiff and against both defendants, assessing plaintiff's damage at $10,000. Defendants moved separately for judgment n. o. v., which motions were denied. Their applications for new trial were likewise denied, and judgment was entered pursuant to the jury's verdict, from which judgment and from the order denying their applications for new trial defendants have now appealed.

We will examine first the question of the liability of appellant R. G. Stevens. He had extended no invitation to respondent, was not operating or in control of the automobile at the time of the accident, and indeed was not even present. The only allegations of the pleadings and the only facts established by the proof from which liability of R. G. Stevens (assuming liability on the part of Richard) could by any possibility be argued are these: The car was being operated at the time of the accident by his minor son. He had consented that his son might use the car and might make

the particular trip therein. The son's object in making the trip was to resume his attendance at the State University. The father desired the son to have an education, desired him to attend this particular school, and bore the expense of his so doing.

■■ Of course the relationship of parent and child, standing alone, does not render the father liable for the torts of his minor son. Section 199, Rev. Code 1919; Johnson v. Glidden (1898) 11 S. D. 237, 76 N. W. 933, 74 Am. St. Rep. 795; Fanton v. Byrum (1910) 26 S. D. 366, 128 N. W. 325, 34 L. R. A. (N. S.) 501, 1 N. C. C. A. 812. Liability cannot be predicated on the mere fact that the father furnished an automobile for the use, pleasure, and convenience of his son and other members of the family; the "family purpose doctrine" having been definitely rejected by this court. Behseleck v. Andrus (1932) 60 S. D. 204, 244 N. W. 268, 88 A. L. R. 596. Obviously the fact that the father desired the son to have an education or even that he desired him to attend this particular school and that he, the father, paid the expense thereof does not render the education of the son a purpose of the father in any such sense or to any such extent that the son, in pursuing his education or in journeying to Vermillion to attend upon sessions of the school, was engaged in the business of the father or acting in the father's behalf so as to justify the application of the rule of "respondeat superior" or any analogous principle. Cf. Kunkle v. Thompson (1917) 67 Pa. Super. Ct. 37. That the education of the son was not in the eyes of the law a partnership enterprise or joint adventure of himself and his father is too apparent to justify either discussion or citation of authority. Respondent does not suggest, and we are unable to discover, any valid legal theory which could sanction recovery by respondent against appellant R. G. Stevens on this record. To deny his motions for directed verdict and for judgment n. o. v. was manifest error.

We turn now to the matter of the propriety of the judgment as against appellant Richard Stevens. Some thirty-three assignments of error are argued in the brief, and we will examine first the assignments that the court erred in denying Richard's motion for directed verdict at the close of all the testimony and in subsequently denying his motion for judgment n. o. v., and in this con-

nection it becomes necessary to determine relevant facts as shown by the record and law applicable thereto.

At the trial respondent called Richard Stevens as an adverse witness under the statute, and his version of the matter was substantially this: That he had been traveling on a main traveled through highway (paved at the place of the accident) with stop signs on both sides at intersections at about the same rate of speed all the way from Sioux Falls. That he was driving south on the right-hand or westerly side of the pavement, and when he was a couple of blocks north of the intersection observed the Johnson car approaching from the west on the side road and expected that it would stop. The side road on which Johnson was approaching was a graveled road, and it is conceded that there was a stop sign thereon about 40 feet west of the edge of the paving on the through highway, and that it was Johnson's duty, under the law of this state, to bring his car to a full stop before entering the intersection of the graveled side road and the paved through highway. Richard says that when he was about 100 feet north of the intersection it began to look as though Johnson was not going to stop and he (Richard) was afraid there was going to be trouble. In trying to avoid collision he swerved over to the east side of the paving and stepped on the gas to speed up his car in an effort to get through the intersection ahead of the Johnson car. He says that he was in the southeast corner of the intersection with the left wheels of his car out on the graveled shoulder at the edge of the paving when the front end of the Johnson car (which had continued to advance without stopping and had swung a little to the south) hit the back end of the Stevens car on the right-hand side just about at the right rear fender.

After the testimony of Richard Stevens respondent called the man Johnson. It appears from the record in this case that before instituting the present action respondent had sued Johnson to recover damages for this same accident, which litigation was still pending at the time of the trial of the present case. Johnson testified, in substance, that he approached the intersection from the west, driving very slowly, and brought his car to a complete stop with the front end projecting about 3 feet on to the paving, the paving being 20 feet in width; that after the Johnson car was completely stopped in this location Richard Stevens, driving south

on the pavement at a speed of at least 70 miles an hour, notwith-standing the fact that he had 17 feet of paving in which to get around the Johnson car, crashed into it. Johnson admits that after the accident both cars were in the ditch south and east of the intersection.

Thereafter respondent herself testified. She flatly contra-dicted the testimony of her witness Johnson and gave a version of the facts which in all essential details absolutely corroborated the story of appellant Richard Stevens. Her testimony relative to the facts and circumstances surrounding the collision is fairly epitomized as follows:

"After the Johnson car passed the stop sign it seemed to continue at the same rate of speed. They came right on. I could not notice they slowed up any. The front part of their car hit the right back wheel of our car. Our car got past in front of them before it was hit. I know our car was on the east side of the paving and our whole car except the back end had practically passed over the intersection. Our car was hit in the back end clear over on the east side of the road and I think the front end of our car was beyond the intersection on the south side of the inter-section. I think the Johnson car was moving when it hit our car. I first saw the Johnson car when it passed a grove of trees about a half mile west of the intersection. I watched it off and on but didn't pay much attention to it. When I did commence to pay attention to it we were about 125 or 150 feet north of the intersection I believe. So far as I saw, the Johnson car kept right on coming at the same rate of speed. I didn't call Richard Stevens' attention to the John-son car at any time.

"I have ridden in cars a good deal and can judge the speed of a car, or could before my accident. I could see the speedometer, as well as having my own judgment in the matter. We left Sioux Falls about four o'clock that day and the accident happened some-where around five. Mr. Stevens drove about the same speed all the way down there and I knew all the time how fast he was driving. It was between fifty and fifty-five miles an hour. Immediately be-fore the accident happened Mr. Stevens made a quick turn to the east and at the same time increased his speed so that right at the time of the accident he was going faster. After the accident the Johnson car was down in the ditch on the southeast corner of the intersection."

■ The testimony of respondent and of her witness Johnson cannot be reconciled. Particularly in view of the litigation pending against him, it is easy to understand that Johnson was by no means an unbiased witness. His testimony as a whole is internally inconsistent, does not check with admitted physical facts, and is in parts entirely incredible. However, entirely regardless of the weight or credibility of Johnson's testimony, we believe it is the better and the sounder view that respondent cannot, under the circumstances shown by this record claim the benefit of a version of relevant facts more favorable to her contentions than she herself has given in her own testimony. As well stated by Lumpkin, J., in Western & A. R. Co. v. Evans (1895) 96 Ga. 481, 23 S. E. 494, 495, "Every witness is under a solemn obligation to tell the truth, the whole truth, and nothing but the truth; and this obligation is especially binding upon one who seeks, by his own testimony, to establish a substantial right against another. Railway Co. v. Beauchamp, 93 Ga. 6, 19 S. E. 24. It surely can never be unfair to a party laboring under no mental infirmity to deal with his case from the standpoint of his own testimony as a witness."

This matter is dealt with in a comprehensive annotation in 50 A. L. R. at page 979, which states the rule as follows: "An examination of the decisions reveals that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is non-suited or the court directs a verdict against him."

This annotation cites, among others, the case of Stearns v. Chicago, R. I. & P. R. Co. (1914) 166 Iowa 566, 148 N. W. 128, which contains an excellent discussion of the point. In addition to the cases cited in the annotation, see, also, Jacobs v. City of Cedar Rapids (1917) 181 Iowa 407, 164 N. W. 891; Balin v. Kimmelman (1929) 295 Pa. 301, 145 A. 303; Klein v. U. S. Casualty Co. (Mo. App. 1927) 295 S. W. 833; Ellis v. Wolfe, etc., Co. (1932) 227 Mo. App. 508, 55 S. W. (2d) 309; McCoy v. Home, etc., Co (Mo. App. 1933) 60 S. W. (2d) 715; Noel v.

LaPointe (1933) 86 N. H. 162, 164 A. 769; McMath v. Staten (Tex. Civ. App. 1931) 42 S. W. (2d) 649; Virginia, etc., Co. v. Lenz (1932) 158 Va. 732, 164 S. E. 572; Chakales v. Djiovanides (Va. 1933) 170 S. E. 848.

Upon the record in this case respondent was not entitled to have either the court or a jury find the facts more favorably to respondent's contentions than her own testimony has indiciated they actually were.

■ ■ Taking, then, respondent's version of the matter, we have this situation. Her host was driving and had been driving for about an hour upon a through highway (and incidentally the record shows that road and weather conditions were good) at a consistent rate of 50 to 55 miles per hour. Respondent was familiar with automobile driving and was fully aware at all times of the rate of speed and made no protest or objection whatsoever at any time. She says that she was "scared to death all the time" because of this rate of speed, but made no protest because she thought she had no right so to do. Her opinion in that respect is not, we think, material; nor is it material whether the speed at which Richard drove was negligent as between himself and the rest of the world other than respondent. Respondent in her brief says: "We agree with appellants when they say that this rate of speed was a reasonable rate of speed considering the nature of the highway." But in any event, respondent, having knowingly acquiesced in the maintenace of that rate of speed during the entire journey for a period of over an hour on the same highway, must be deemed, as a matter of law, to have assumed such risks as might arise therefrom, and will not now be permitted, so far as she is concerned, to predicate liability on the proposition that the accident might not have occurred if Richard had been proceeding at a lesser speed. It is undoubtedly true upon the decisions that whether a guest should have protested concerning the rate of speed or manner of driving depends upon the circumstances of the particular case and is frequently, if not usually, a jury question, but it can hardly be said to be a jury question here. According to respondent's own testimony, for nearly an hour she had fully realized the rate of speed and had regarded it as dangerous and alarming, and yet she had said nothing. A clearer case of duty to protest and acceptance of hazard by failure to protest

could hardly be imagined. From respondent's own evidence only one conclusion could reasonably be drawn. Cf. Friedman v. Friedman (1932) 40 Ariz. 96, 9 P. (2d) 1015; Clark v. Traver (1923) 205 App. Div. 206, 200 N. Y. S. 52, affirmed 237 N. Y. 544, 143 N. E. 736; Perry v. Ryback (1931) 302 Pa. 559, 153 A. 770; Maybee v. Maybee (1932) 79 Utah 585, 11 P. (2d) 973; Haines v. Duffy (1931) 206 Wis. 193, 240 N. W. 152; Huddy Automobile Law (9th Ed.) 5, 6, p. 263.

■ ■ Richard, then, was driving along this through highway at a rate of speed of which respondent, under the circumstances of this case, will not be heard to complain. When he was some two blocks from the intersection in question he observed the Johnson car approaching along the side road from the west. Respondent apparently had seen the Johnson car before that, but had not mentioned it to Richard. It is clear from the record that both Richard and respondent, when they first observed the Johnson car, assumed that it would obey the law and stop before entering the intersection. They had a right so to assume, and no circumstance appears from the record which would render it negligent on the part of either of them to indulge such assumption. Cf. Huddy Automobile Law (9th Ed.) 3, 4, p. 344; Townsend v. Reader (1930) 252 Mich. 465, 233 N. W. 381; Church v Shaffer (1931) 162 Wash. 126, 297 P. 1097; Dikel v. Mathers (1931) 213 Iowa, 76, 238 N. W. 615; Loizzo v. Conforti (1932) 207 Wis. 129, 240 N. W. 790. In the instant case the Johnson car was not proceeding rapidly (Johnson himself testifies that he never drove over 25 miles per hour and was going only 10 or 12 miles per hour at the stop sign, and Richard Stevens estimated the speed of the Johnson car when he first saw it at about half his own speed of 50 to 55) and the record is entirely devoid of evidence of the existence of any circumstance indicating that the Johnson car was not going to stop until it was observed to proceed past the stop sign with little or no diminution of speed at a time when Richard Stevens was very near the intersection. He estimates the distance at 100 feet. Respondent says that the Stevens car was 125 to 150 feet from the intersection when she first began to pay any particular attention to the Johnson car and doubt that it was going to stop. Richard, then, was proceeding south along the west side of the paved highway at 50 to 55 miles per hour, a very short distance north of the

intersection, when circumstances first appeared indicating that the Johnson car was about to proceed into the intersection from the west without stopping. He was alarmed, and thought there was going to be trouble. In an effort to avoid it, he swung to the east and stepped on the gas attempting to get through the intersection and thus avert a collision. In that attempt he lacked a little of success. It is very clear, under the circumstances here appearing, that Richard Stevens was confronted with an emergency upon discovering that the Johnson car was probably going to come on without stopping. He had to make an instant choice between attempting to stop his own car before it reached the intersection and attempting to get through the intersection ahead of the Johnson car. He had to do something immediately in an effort to protect himself and his guest. He chose the second alternative, and acted accordingly. There is an utter lack of testimony to show that Richard, discovering himself thus suddenly in a position of imminent peril, did not exercise every degree of care, skill, and judgment commensurate with the circumstances. It is not material, even if assumed to be true (and the record by no means shows that it is true), that if he had selected the other alternative he might perhaps have been able to stop his car before reaching the intersection or to have passed to the rear of the Johnson car and thus to have avoided the accident. The rule is elementary, and is stated in all the texts.

"The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." 20 R. C. L. p. 29.

See, also, 45 C. J. p. 710; Huddy Automobile Law (9th Ed.) 3, 4, p. 54; Uhl v. Fertig (1922) 56 Cal. App. 718, 206 P. 467.

We believe respondent is bound by her own testimony under the circumstances shown by this record, and we think her testimony fails to leave any jury question in this case. In fact, we believe that it affirmatively appears from her testimony that appellant Richard Stevens committed no actionable fault upon which respondent, under the circumstances of this case, is entitled to predicate liability, and his motion for directed verdict should have been granted.

Nonliability on the part of Richard furnishes, of course, an additional and entirely conclusive reason for direction of verdict in favor of appellant R. G. Stevens. If, under the circumstances shown by this record, there is no evidence sufficient to support a finding of liability as against appellant Richard, then a fortiori there can be no recovery as against appellant R. G. Stevens.

The conclusions above arrived at render it unnecessary to pass upon any other of the errors assigned. The judgment and order appealed from are reversed, and the cause remanded with directions to enter judgment in favor of both appellants pursuant to their respective motions for directed verdict and for judgment n. o. v.

All the Judges concur, excepting RUDOLPH, J., who, deeming himself disqualified, does not sit.