### HOSSACK v. METZGER.
### No. 13316.

Circuit Court of Appeals, Eighth Circuit.
July 8, 1946.

Rehearing Denied July 29, 1946.

---

[1] Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368.

Holton Davenport, of Sioux Falls, S. D. (Ellsworth E. Evans and Louis R. Hurwitz, both of Sioux Falls, S. D., on the brief), for appellant.

George J. Danforth, of Sioux Falls, S. D. (G. J. Danforth, Jr., of Sioux Falls, S. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judge.

RIDDICK, Circuit Judge.

James W. Hancer was burned to death in a fire which occurred in a motion picture theatre in Gregory, South Dakota, where he was employed as the operator of projection machines. This action against the owner of the theatre for damages for Hancer's death was brought by the appellant as administratrix of Hancer's estate. Jurisdiction of the Federal court is based upon diversity of citizenship.

The appellee theatre owner had elected not to comply with the South Dakota Workmen's Compensation Act. SDC 64.0101 et seq. Because of his non-compliance, appellee is subject to an action for damages for the injury or death of an employee resulting from negligence attributable to appellee, and he is not permitted to defend on the ground that the employee was guilty of contributory negligence, or that the injury was caused by the negligence of a fellow employee, or that the employee had assumed the risk of in-

jury. In such an action the burden is upon the plaintiff employee to prove that the negligence of his employer or of one for whose negligence the employer is legally responsible was the proximate cause of his injury. § 64.0109, South Dakota Code of 1939, Vol. 3, p. 1240; Stevenson v. Douros, 58 S.D. 268, 235 N.W. 707, 709; Voet v. Lampert Lumber Co., S.D., 15 N.W.2d 579, 582.

In the complaint the appellee was charged with negligence causing the death of Hancer because of the acts of Harry Ritter, an alleged employee of appellee, in the handling of a reel of motion picture film after the discovery by Ritter that the film which he was handling was on fire. In the words of the complaint, "said co-employee [Ritter] was negligent in the particulars hereinafter set forth; that said fire could easily have been extinguished by the simple operation of tearing off the short section of said film that had become ignited, and detaching the same from the balance of said film, which operation was easily and conveniently within the means of said co-employee to perform; that said co-employee did not perform such operation of so detaching the said ignited film, but negligently and carelessly so handled such film that the ignited portion thereof came in contact with the balance of said film, thereby causing the entire said set of film to ignite and burn violently; that thereupon said co-employee negligently and carelessly threw said set of film toward or at an open door of said booth or small room where said film was subject to a substantial draft and large quantities of oxygen, causing the said set of film to burn violently, with terrific heat, and completely blocking any egress of the said James W. Hancer from said theatre; that all of said acts herein set forth on the part of said co-employee were in the course of the employment aforesaid of the said co-employee by the said Defendant."

The defenses set up in the answer were: (1) that Ritter was not an employee of appellee for whose negligence, if any, appellee was responsible; (2) that Ritter was not negligent in the handling of the film after discovering that it had become ignited; (3) that the sole cause of Hancer's death was his negligence in smoking cigarettes in the projection booth where the fire occurred; and (4) that, if not caused by Hancer's negligence, the fire was the proximate cause of Hancer's death.

At the conclusion of the evidence the trial judge directed the jury to return a verdict for appellee. This appeal challenges the correctness of this ruling. The record does not disclose the reason upon which the trial judge based his decision, but the parties agree that his statement of it was that Ritter, in handling the ignited film, was confronted with a sudden emergency not caused by his negligence, and for that reason was not chargeable with negligence because of anything he did or failed to do after the discovery of the fire.

The ultimate question on this appeal is whether there is any substantial evidence upon which a verdict of the jury for the appellant could be sustained. "For the decision of that question, we must assume as established all the facts that the evidence supporting the plaintiffs' claims reasonably tends to prove and that there should be drawn in the plaintiffs' favor all the inferences fairly deducible from such facts." Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439; Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 72 A.L.R. 7; Ulrikson v. Chicago, Milwaukee, St. Paul & Pacific Railway Co., 64 S.D. 476, 268 N.W. 369; Miller v. Stevens, 63 S.D. 10, 256 N.W. 152.

Photographic film used in the projection of motion pictures is highly inflammable. The danger of fire resulting from the operation of motion picture projection machines is universally recognized. In South Dakota booths in which the projection machines are operated are required to be of fireproof construction, and doors of the booths to be kept closed during projection operations. Smoking and keeping inflammable substances in or about the projection booths are prohibited. § 31.0412, South Dakota Code of 1939, Vol. 1, p. 1242. By a rule of appellee, of which Hancer was informed, smoking was prohibited in the balcony of the theatre on which the projection booth was located.

Will Jonas was employed by the appellee as manager of the theatre. The contract of employment was in writing. Jonas was given such general authority as was necessary to the management and operation of a motion picture theatre. Employees for the position of projection machine operator were to be selected by Jonas and their names with recommendations submitted to appellee for his approval. The employment of Hancer as operator of the projection machine is not denied.

The fire occurred in October, 1943. In August of that year Hancer notified Jonas of his intention to quit his employment at the theatre. Jonas and Hancer agreed that Harry Ritter should be brought into the theatre to be trained to take Hancer's place. Ritter on the invitation of Hancer, approved by Jonas, began work at the theatre in August under the direction of Hancer. By the middle of September Jonas and Hancer were of the opinion that Ritter was qualified to succeed Hancer in the operation of the projection machines, and with the approval of Jonas, Hancer notified Ritter that payment for his services would begin on September 19. There is nothing in the evidence to show whether the appellee had knowledge of or gave his approval to this arrangement before the fire occurred, but after the fire appellee paid Ritter for the damages sustained by him in the fire and for his services as an employee of appellee.

The balcony in the theatre extended across the front of the theatre building. It contained a narrow hallway running the width of the building, reached by a stairway from the first floor; the office of the theatre; and the projection booth. On one side of the hallway were a number of windows which opened onto a canopy over the entrance to the theatre. The projection booth and the office of the theatre were on the opposite or the theatre side of the hall. The door to the projection booth was approximately in the center of the hallway. The booth was a small room measuring approximately 12 x 14 feet. It contained two projection machines and a rewind table. The rewind table held apparatus for rewinding films which had been run through the projectors. A reel or spool of film taken from a projection machine was placed on a spindle attached to an upright on one end of the rewind table, and one end of the film to be rewound attached to a similar spool placed on a spindle at the opposite end of the table. This latter spindle was operated by an electric motor, which by rotating the spool attached to the spindle accomplished the rewinding of all of the film except a portion of it from four to six feet in length which remained unwound after the motor was stopped. At this point in the rewinding operation the spool on which the film had been rewound was removed from the spindle and the depending portion wound upon it by hand, the operator turning the spool in his hands until the film was completely wound on the spool. One end of the rewind table was immediately adjacent to the door leading from the balcony hall into the projection booth.

On the night of the fire Mrs. Hancer came to the theatre pursuant to an arrangement with her husband. She went to the balcony in the theatre, and stood in the doorway between the balcony hall and the projection booth. The door to the booth was open. Hancer was engaged in the operation of a projection machine. Ritter was rewinding a film at the rewind table. While Mrs. Hancer was standing in the booth doorway, Ritter removed from the rewind table the spool on which the film had been rewound. The usual length of film was dangling from the spool in his hands. One end of the unwound portion of the film was on or close to the floor of the booth. Mrs. Hancer saw a small spark glowing near the end of this portion of the film. Immediately she told Ritter that the film was on fire, directing him to tear off the unwound portion. Ritter did not tear the film as directed. Instead, he continued to revolve the spool in his hands, winding on the spool the unwound portion of the film. He testified that it was his intention to continue winding the reel until he could reach the small spark of fire with one hand and smother it with his fingers. When the ignited portion of the film came within his reach, Ritter tried to extinguish the fire in the manner stated. The heat of the film burned his hand. The

ignited portion came in contact with the spool of film, setting it ablaze. Ritter threw the film into the doorway leading from the booth into the balcony hall where it burst into violent flames. Both Ritter and Hancer were trapped in the booth. Ritter dashed through the flaming film and escaped down the stairway which afforded the only means of egress from the balcony. The burning film was between Mrs. Hancer and the stairway. The flames completely closed the balcony hall. Mrs. Hancer escaped through one of the windows to the canopy over the entrance to the theatre and from that to the sidewalk below. Hancer's escape from the booth was prevented by the violently burning film. Ritter and Mrs. Hancer sustained serious burns, and Hancer lost his life.

Both Hancer and Ritter were cigarette smokers. Ritter testified that he did not often smoke cigarettes in the balcony of the theatre. He said that he was a pipe smoker. He also testified that about twenty minutes before the fire he observed Hancer smoking a cigarette in the balcony hallway. Mrs. Hancer testified that she had seen Hancer on previous occasions smoking cigarettes on the balcony hallway, and that he placed the stubs of the cigarettes in an ashtray on a desk at one end of the hall. Ritter said that he had seen Hancer place stubs of cigarettes in the lid of a can on the rewind table. He testified that in his opinion the film must have been set on fire by coming in contact with a burning cigarette in this can lid when he removed the reel of film from the rewinding apparatus. He also testified that while he was engaged in rewinding the film he was standing by the table in such a position that his face was immediately above the can lid in which he had seen Hancer place cigarette stubs on previous occasions; that he did not see or smell any cigarette stubs in the can lid; that if burning cigarettes had been in the lid at the time he would have either seen or smelled them. He testified further that if he had torn the film as directed by Mrs. Hancer the fire would not have occurred. Several witnesses testified to statements of Mrs. Hancer in which she said that in her opinion the film was ignited from cigarettes which her husband had left in the can lid on the rewind table. The nurse in charge of the hospital to which Mrs. Hancer was taken after the fire testified that Mrs. Hancer volunteered this information to her immediately upon arrival at the hospital. Other witnesses testified to similar statements by Mrs. Hancer made while she was under the influence of opiates administered to her at the hospital. Another witness testified that Mrs. Hancer made the same statement to him some time after she had left the hospital. Mrs. Hancer either denied the making of the statements or testified that she had no recollection of them.

Jonas testified that after the fire he found stubs of cigarettes on the floor of the projection booth under the rewind table, and that there was also a can lid on the floor of the booth beneath the rewind table. There was always a number of these can lids around the projection booth. The deputy fire marshall of South Dakota testified that some time in 1943 he had made a casual inspection of the projection booth and the equipment in it, and found nothing to indicate failure of the owner of the theatre to comply with the laws of South Dakota with respect to its construction and maintenance. Two witnesses experienced in the operation of projection machines testified, one for appellant and one for appellee. Appellant's witness testified to the highly inflammable and explosive character of motion picture film. He said that a loose end of film "traveling around" a projection booth is always dangerous; that it might get in contact with hot carbon removed from the projection machines, or in the line of light from the projector, in which event it might become ignited; also that it was possible for the film to be set on fire by extreme friction if the rewinding operations were conducted at a too great speed. Appellee's witness made a general inspection of the equipment inside of the booth about two days after the fire. He said he found no defective equipment in the booth; that the projection machine of the type used by appellee was completely covered in a case in which there are two openings closed by doors. The opening in the rear of the

machine is for the purpose of lubrication, and the one in front is to permit film to be introduced into the machine for the exhibition of the picture. The witness said that there were apertures in the back of the machines through which arc lights projected the film on the screen. He said there was nothing on the outside of the machine which would cause the loose end of film to ignite if it came in contact with the outside of the machine. Jonas and Ritter gave similar testimony.

There was evidence on behalf of appellant that Ritter easily and within the time at his disposal could have torn off the ignited portion of the film, and evidence from witnesses for appellee to the effect that the tearing of the film could not have been easily and quickly done except by one experienced in the operation.

 It cannot be said that on the evidence in this case the jury reasonably could reach only one conclusion, and that in favor of appellee, on every question of fact at issue. The disputed issues of fact were, therefore, for the jury and not for the court. Elzig v. Gudwangen, supra; Thompson v. Anderson, 8 Cir., 138 F.2d 272, 149 A.L.R. 899; Jerke v. Delmont State Bank, supra; Ulrikson v. Chicago, Milwaukee, St. Paul & Pacific Railway Co., supra; Miller v. Stevens, supra; Berg v. New York Central R. Co., 391 Ill. 52, 62 N.E.2d 676. That there was no evidence to support a finding of negligence on the part of appellee in the construction and maintenance of the projection booth is not important because negligence is not charged in that respect.

Whether Ritter was an employee for whose negligence, if any, the appellee was responsible was clearly for the jury. Moreover, the appellee did not take the stand to deny Ritter's employment. His failure in this respect, without explanation, justifies the inference that his testimony if given would have been favorable to the appellant on this point.

On the evidence the question of the proximate cause of Hancer's death was for the jury. The evidence did not conclusively establish the cause of the fire or that the fire, whatever its origin, was the proximate cause of Hancer's death. Berg v. New York Central R. Co., supra; Hickey v. Missouri Pacific R. Corporation, 8 Cir., 8 F.2d 128, 129. The jury was not required to accept the testimony of Jonas and Ritter as to the probable origin of the fire even if this testimony could be said to be uncontradicted. Elzig v. Gudwangen, supra, 91 F.2d at pages 440, 441. No witness saw Hancer smoking cigarettes in the projection booth immediately preceding the discovery of the fire on the film in Ritter's hands. There is, indeed, no testimony that Hancer ever smoked cigarettes in the projection booth. Ritter testified that Hancer usually smoked in the balcony hallway. And the fact that during the showing of the motion picture Hancer came out of the booth into the hallway to smoke a cigarette lends some support to the inference that he was not smoking cigarettes in the projection booth immediately before the fire. Ritter as well as Hancer smoked cigarettes. Ritter was also a pipe smoker. Ritter's testimony that he saw no cigarettes in the can lid on the rewind table and that, if any had been there, he would have either seen or smelled them tends to support the finding that no cigarettes were in the can lid while Ritter was rewinding the reel. That the hazard of fire in a projection booth exists even where the booth and projection machines are properly constructed and maintained is established by the evidence. The jury might reasonably have concluded on all the evidence that the cause of the fire was unknown.

 The question of whether Ritter was guilty of negligence which was the proximate cause of Hancer's death was likewise for the jury. If it be conceded that the evidence conclusively shows that when Ritter discovered the small spark on that portion of the film not wound on the reel which he held in his hands he was confronted with an emergency not caused by his tortious conduct, the standard of conduct required of him was still that of a reasonably prudent man under like circumstances. 2 Restatement of Law of Torts, § 296. Ritter admits that if he had torn off the loose end of the film when Mrs. Hancer said, "The film is on fire.

Tear it off", the fire would have been stopped, but he says that he "did not have very much time to act" and that he tried to tear it off but could not. There is some evidence, however, that the operation was one easily and quickly performed within the time at his disposal and it can not be held as a matter of law that there was no negligence on his part, or that such negligence was not the proximate cause of the death. The questions were for the jury.

Reversed and remanded for further proceedings.